2. Under the statute of mortmain, 9 Geo. II. c. 36, all gifts to charities that require, or direct, or imply, that money or personal property is to be turned into land, are statutorily void. Hence a gift " for building or purchasing a chapel," a direction to " establish," or to " provide," or to " found," or to " endow," is frequently held to imply or authorize building, and is therefore void. The cases cited by the exceptant are applications of this doctrine, and they will be found thus explained in Theobald on Wills, 2d ed., 302–313. They do not decide and were not intended to decide that a hospital could not be considered as founded or established, until or unless the buildings were erected, equipped or endowed.

PER CURIAM:

We need not add anything to the careful and elaborate opinion of the learned auditing judge of the court below. The decree is affirmed for the reasons given by him.

Decree affirmed and the appeal dismissed at the costs of the appellant.

---

## APPEAL OF DANIEL CROSSON.

### [ESTATE OF CHAS. J. CROSSON, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF PHILADEL-
PHIA COUNTY.

Argued March 27, 1889—Decided April 8, 1889.
[To be reported.]

1. Where real estate to be sold at an Orphans' Court sale is subject to fixed liens, the amount of which cannot be ascertained at the time of the sale, it is lawful for the land to be sold as though there were no incumbrances, the purchaser to be credited with their amount when ascertained and the accountant to be chargeable with the balance of the bid accepted.

2. Where a claimant against a decedent's estate made a tombstone for the decedent and inclosures for the lot in which he was buried, under an arrangement with the administratrix by which he was not to put up the

work until he was paid or his claim was allowed in the Orphans' Court, he is entitled to be awarded the value thereof, though the work yet remains in his yard.

Before PAXSON, C. J., STERRETT, CLARK, McCOLLUM and MITCHELL, JJ.

No. 212 July Term 1888, Sup. Ct.; court below No. 169 January Term 1885, O. C.

Charles J. Crosson died in Philadelphia on December 26, 1884, intestate, unmarried and without issue, leaving to survive him as his right heirs, inter alios, Daniel Crosson, a brother, and Bridget McElwee, a sister. Letters of administration upon his estate were granted to Bridget McElwee.

The first and second accounts of said administratrix, filed to the number and term of the court below indicated, and accounting for the proceeds of sale of certain real estate sold by her under the order of the Orphans' Court, were called for audit, when by agreement they were referred to *Mr. James L. Stanton,* as auditor, and in the hearing before him the following facts appeared:

The order of sale of the real estate, consisting of premises Nos. 1902 and 1906 South street, recited that the properties were each subject to a yearly ground-rent of ninety-six dollars, and to the balances due upon each of two mortgages given to a building and loan association. The advertisement of the sale gave notice that the properties would be sold "subject to a yearly ground-rent of ninety-six dollars on each of the above properties, and also to a balance of mortgages amounting to about $2,500 on both of the above described properties." The return of the order of sale set forth that the administratrix sold the premises as one lot to Michael Keegan for the sum of $4,850, subject to the ground-rents. The necessary security being entered, the sale was duly confirmed.

In the second account of the administratrix, filed some months after the sale, the accountant charged herself with $2,018.23, as the proceeds of sale of the properties above mentioned. The correctness of this amount being questioned, the accountant produced before the auditor a memorandum of settlement with the purchaser, by which it appeared that the lat-

ter had been allowed to deduct from the amount of his bid the following items :

| | |
|---|---|
| Balances on mortgages | $744.40 |
| Interest on $1,400 mortgage | 94.60 |
| Water rent | 16.00 |
| Ground rent | 170.60 |
| Mortgage | 1400.00 |

There were other deductions allowed in the memorandum, to which, however, no objection was made.

As an explanation of these allowances, the accountant produced testimony to the effect that on the day and at the time of the sale, there being no definite information as to the amount claimed to be due upon the association mortgages, the auctioneer announced by direction of the administratrix, that as there was an uncertainty about the amount of the mortgages, he would sell the properties as though clear of everything except the ground rents, and the sale so made was afterwards settled on said basis.

The commissions for which the accountant had taken credit, to wit: $234.46, were objected to on the ground that she had been guilty of misconduct in contriving to purchase the properties at her own sale, through an agent, or at least to control the privilege of acquiring them thereafter. The accountant was cross-examined upon this matter:

Q. Do you say under your oath that you have no interest in any of these properties?

Objected to as not cross-examination.

A. I have no interest in any of these properties.

Q. Is either one held for you or for your benefit? A. I could not say. I could not tell what might turn up. Q. Which one have you an interest in? A. I decline to answer. Q. Why do you decline to answer? A. Because I don't think it is a necessary question. Question repeated. A. Neither one. Q. Did Mr. Keegan buy any one for your benefit? A. If I am able to pay for it. Q. Which one? A. Either one. Mr. Keegan collects the rent. I do not get any of it. I have made no arrangement with Mr. Keegan about getting the property. If he sells one I am to have the first chance. Don't know at what price. He has not asked me any price.

In my brother's lifetime they rented at thirty-five dollars a month apiece.

Michael Keegan presented a claim of $250, for marble work ordered by the accountant, $150 of which was for a tombstone for decedent; and $100 for inclosing the lot where decedent was buried. He testified that the lot was inclosed with marble posts, galvanized tubing, marble coping, etc. When the hearing before the auditor was about to be closed, it was discovered that no work whatever had been put on the lot. On being recalled, and confronted with this fact, the claimant testified that his former testimony had been misunderstood; that he had not intended to say that the work was put up; that he had an arrangement with the accountant whereby the claim was to be presented and, if allowed, he would put up the work; the work was done, but in his yard.

The auditor, citing and considering Penn. Square B. Ass'n's App., 81* Pa. 330; Fish's Est., 14 W. N. 566; Wood v. Levis, 14 Pa. 9, ruled that the action of the administrator in selling the properties discharged of the mortgages was unlawful, and that such a practice would be injurious to the interests of estates and misleading to creditors and heirs. He therefore surcharged the accountant with the sum of $2,511.90, arrearges of mortgages, interest on same, water rent, ground rent, and mortgage. He also disallowed, upon the grounds hereinbefore referred to, the commissions, $234.46, claimed by the accountant and the claim of $250 made by Michael Keegan.

To the report of the auditor making distribution in accordance with his rulings, the accountant excepted, inter alia, that the auditor erred:

3. In allowing a surcharge of the sum of $2,511.90, arrearages of mortgage, interest on the same, water rent, ground rent, and mortgage, allowed purchaser to be deducted from his bill upon premises Nos. 1,902 and 1,906 South street, in the settlement of the sale and transfer of said premises.[1]

4. In disallowing the commissions, $234.46, claimed by the administratrix.[2]

To the same report Michael Keegan also excepted, that the auditor erred:

1. In disallowing the claim of exceptant for the value of the

head- and foot-stone, posts, railings, etc., for the burial lot of decedent.[3]

On June 30, 1888, said exceptions having been argued before the court in banc, FERGUSON, J., delivered the following opinion:

There have been a number of exceptions filed to the report of the auditor in this estate, which will have to be considered separately.

With regard to the several exceptions filed by the accountant :—

　　　　*　　　*　　　*　　　*　　　*　　　*　　　*

The third exception of the accountant is in relation to a matter of more importance. The auditor surcharged the accountant with the sum of $2,511.90, the amount of certain building association mortgages and the interest thereon, which were secured upon the real estate of the decedent sold under an order of this court for the payment of his debts.

It appeared that the premises were subject to a ground-rent, and also to the balance due to the association upon the said mortgages. It was so stated in the order of sale and also in the hand-bills and advertisements. But at the time of the sale it was announced by the auctioneer that the exact balance due upon the mortgages was not ascertained, and that for the purpose of enabling buyers to bid intelligently, and know exactly what they were paying for the property, he would cry the sale as if he were selling subject to the ground-rent only, and that at whatever price the property should be struck off, it would be the price of the same incumbered only by the ground-rent. In pursuance of this arrangement Michael Keegan bought the premises for the sum of $4,850, and in his settlement with the accountant she allowed him to deduct from the said purchase-money the sum of $2,511.90, the sum which it was then ascertained was the balance due upon the said building association mortgages. With this amount the auditor has now surcharged the accountant, upon the ground "that what the auctioneer or any one said upon the subject is immaterial; that the mortgages were fixed incumbrances, which the purchaser was obliged to take subject to, and his bid could only be so regarded," etc. While the law as stated by the auditor is undoubtedly

correct, that purchasers at an Orphans' Court sale buy subject to all the fixed incumbrances, yet equity will not permit the auctioneer, who is the agent of the seller at a sale of this kind, to dig a pit for the unwary purchaser to fall into. It is not an immaterial thing what the auctioneer says; on the contrary, it has been held that "judicial sales, especially those made under the direction of the Orphans' Court, should be so conducted as not to mislead or entrap bidders. Notwithstanding the maxim of caveat emptor is applicable to such sales, it is still the duty of those who conduct them to act in good faith and as far as possible avoid any misdescription or misrepresentation as to the quality or quantity of the property offered for sale:" Schug's App., 14 W. N. 50; Johnson's App., 114 Pa. 132.

Now, in this case, while in all the proceedings in this court the existence of these mortgages upon the premises was fully recited, yet, at the sale, for the convenience of buyers, and necessarily for the advantage of the estate, the sale is conducted as if there were no mortgages there. This fact is admitted by every one, and is so found by the auditor, and yet in face of it he rigidly applies a rule of law to work a great injustice, as if the law were so inflexible as never to bend. In the cases above cited, it was held that even years after the confirmation of a sale by the Orphans' Court, where it still has a grasp upon the fund, it will set aside a sale in order to do justice, where a purchaser has been misled or deceived by the person making the sale. Under the facts of this case, this sale might well be set aside, but we think justice will be substantially accomplished by refusing this surcharge. This exception is therefore sustained.

The next exception is to the disallowance by the auditor of $234.46, the accountant's commissions.

This he does upon two grounds: 1. That the purchaser of some of the decedent's real estate bought the same for the accountant, and she was thereby guilty of a fraud upon the estate; and 2. Because the accountant was guilty of collusion with Michael Keegan to present a fraudulent claim against the estate. The evidence utterly fails to establish either of these propositions. In regard to the first one, the evidence shows that the purchaser bought with his own money and for himself, and has held the title and possession ever since; and, except-

ing a vague statement by the accountant that "something might turn up" by which she would get the money to buy the property from the purchaser, there is no evidence to sustain this allegation. In regard to the second charge, we will consider the alleged fraudulent claim of Michael Keegan in the consideration of his exception to the auditor's finding on that subject, and, as we there find that the testimony fails to establish any fraud, this exception must be sustained.

The next exception which we will consider, is the one just referred to. It is the exception of Michael Keegan to the disallowance of his claim for marble-work for the burial lot of the decedent.

It appeared from the auditor's notes that this claimant testified that he was ordered by the administratrix to do this work, and that he did it, and the lot was inclosed and the work put up at the cemetery. It was subsequently ascertained that there was no work whatever done at the cemetery, and, upon the claimant being recalled, he said that his former testimony had been misunderstood; that he did not say the work was done at the cemetery, but that it was all done ready to put up; that according to his agreement with the administratrix he was not to put the work up in the cemetery until his bill was paid or allowed by the court; the work was all done and ready and in his yard.

This evidence was not contradicted. If it was not true, a visit to the place of business of the claimant would have at once developed that fact. It would have been very easy for those resisting this claim to have put the truth of his statement to the test. If his testimony was misunderstood, he had the right to explain it, or, if he made a mistake, he had a right to correct it. It does not follow that a fraud has been attempted because a man makes a mistake in his testimony. In every case a fraud must be proven, it cannot be inferred; and in this case the evidence falls far short of being sufficient to establish a fraud. At the most it is simply a case of mistake, which was afterwards corrected. We do not see how the auditor could have found any fraud from this testimony, and upon this ground not only to reject the claim, but also to disallow the accountant her commissions for alleged participation in it. This exception is also sustained.

*     *     *     *     *     *     *     *

A schedule of distribution having been prepared, submitted and approved, in accordance with the foregoing opinion, Daniel Crosson took this appeal, specifying that the court erred:

1–3. In sustaining the exceptions to the auditor's report.[1 to 3]

*Mr. James E. Hood* and *Mr. T. M. Daly*, for the appellant:

1. An Orphans' Court sale is a judicial sale, subject to all the rules and conditions of such, and the rule of caveat emptor applies. The thing sold is the interest of the decedent or debtor in the property, subject to all charges and liens which the law preserves, and any bid that is made is made for that interest and nothing more. Nothing can be deducted from the bid because there are liens which the purchaser will eventually have to pay. Representations made by the crier of the sale, or by the administrator who is executing the order of the court, will not excuse the purchaser from paying the full amount: Vandever v. Baker, 13 Pa. 121; Randolph's App., 5 Pa. 242; Loomis's App., 22 Pa. 312; Aulenbaugh v. Umbehauer, 8 W. 48; Reigle v. Seiger, 2 P. & W. 340; Mode's App., 6 W. & S. 280; Devine's App., 30 Pa. 348; Wood v. Levis, 14 Pa. 9; Eshelman v. Witmer, 2 W. 263.

2. In the matter of the commissions to the accountant, the auditor who had the parties before him at intervals for more than a year, was perhaps a better judge of the fact that the administratrix had acquired an interest in the properties than the court. The auditor was in the position of an auditing judge, and his conclusions of fact should not be brushed aside unless clear error is disclosed. As to the claim for the cemetery work, the claimant testified that the work had not been put up. It was done, but in his yard. But can one recover against an estate for work promised to be done?

*Mr. James M. Beck* (with him *Mr. William F. Harrity*), for the appellee:

1. The administratrix is but an officer of the court, and, under the authority of Schug's App., 14 W. N. 49; De Haven's App., 106 Pa. 612; Johnson's App., 114 Pa. 132, the purchaser, had he paid the gross amount of his bid, would clearly have been entitled to have the sale rescinded, whether it had been confirmed or not: Johnson's App., supra; George's App., 12

Pa. 260; Milne's App., 99 Pa. 483; Cummings' App., 23 Pa. 509.

2. Upon what testimony did the auditor find the trust in favor of the accountant in the purchase of the property, and collusion between her and Mr. Keegan? Entirely upon her own testimony, utterly insufficient for such finding. And as to the claim of Mr. Keegan, with the tombstone actually cut, the marble unfit for any other purpose, with the labor and expense actually undergone, and nothing remaining to be done but to remove the work to the cemetery, why should his claim not be allowed? There was not a scintilla of evidence to indicate the existence of a fraud upon the estate.

PER CURIAM:

This case has been so well discussed by the learned judge of the Orphans' Court that we affirm the decree for the reasons given by him.

> Decree affirmed and the appeal dismissed at the costs of the appellant.

---

## APPEAL OF A. H. FOWLER ET AL.

### [A. H. FOWLER ET AL. v. FIDELITY ETC. CO.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY, IN EQUITY.

Argued March 28, 1889—Decided April 8, 1889.
[To be reported.]

(a) A deed of trust directed the trustee to pay over the income and dividends of the trust estate "to Marie . . . . . and should the said Marie die, the said trust herein declared shall enure to the benefit of her heirs; but if she have no children the same shall revert to my estate." The deed further directed that $50 per annum out of the income should be added to the principal.

(b) The deed was executed in Illinois where the grantor lived, and M., the beneficiary, was and continued to be a citizen of Colorado, while the trustee was a Pennsylvania corporation. After the execution of the