## Mosely's Estate

*Richard Wolfrom,* for accountant.

*John McCrea,* for exceptant.

REESE, P. J., June 15, 1940.—Decedent herein died intestate on May 6, 1939, and letters of administration were issued on May 15, 1939, to C. A. Heller. An appraisement and inventory were filed May 20, 1939, showing

personal property of $209.96 and real estate of $3,000. The personal property was insufficient to pay decedent's debts. Among the claims presented to the administrator was that of the executors of the John Hosfeld estate for the amount secured by a mortgage on the real estate.

On June 20, 1939, the administrator filed his petition for an order to sell the real estate for the payment of debts, and in the petition listed among the debts the mortgage debt owing to the Hosfeld estate in the sum of $1,300. An order of court on the same day directed the administrator to sell the real estate at public sale on these terms, inter alia: "Property shall be sold free of encumbrance, excepting taxes of 1939 shall be paid by the purchaser. . . . Bond in the penal sum of $6,000," etc. The notices of the sale in the newspaper and in the posted handbills also recited that the "property is sold free of encumbrances, except that taxes for 1939 shall be paid by the purchaser." At the sale on August 12, 1939, the auctioneer informed the bidders that the property was being sold free of encumbrance, excepting taxes of 1939 which should be paid by the purchaser.

The property was sold to Willis C. Burkholder for $2,150, that being the highest and best bid. The purchaser paid 10 percent down on the day of the sale. On August 14, 1939, the sale was confirmed, and later, after the purchaser learned that the Hosfeld mortgage could be settled for $900, he paid a second instalment of $1,045, but would not pay the balance of $900 until the Hosfeld mortgage was satisfied. The administrator paid $900 to the mortgagee, whereupon the mortgage was satisfied of record, and the purchaser paid the balance of $900 to the administrator and accepted the latter's deed.

Under section 16(o) of the Fiduciaries Act of June 7, 1917, P. L. 447, sales for the payment of debts shall have the effect of judicial sales as to the discharge of liens; and under this section and by reference to the Act of April 30, 1929, P. L. 874, the lien of a mortgage which is a first lien is not divested by a judicial sale, except

that under section 16(o), supra, the orphans' court may decree a sale of real estate for the payment of debts freed and discharged of the lien of a mortgage otherwise preserved from discharge by existing law, if the holder of the mortgage, by writing filed in said court, shall consent to the sale being so made.

In the present case no such consent was filed, and it is the contention of exceptant, decedent's only son, that this court had no power to direct the sale of the real estate free and divested of the first mortgage; that the purchaser bought subject to the mortgage and that it was improper for the administrator to pay the mortgage out of the proceeds of the sale; that the amount so improperly paid should be added to the amount distributable to the next of kin, and the administrator surcharged for this amount. This the auditor declined to do.

Upon examination of the record and the evidence adduced before the auditor, we find that the court ordered and that the property actually was sold free and divested of all liens including the mortgage. Prior to the sale, the attorney for the mortgagee wrote to the administrator advising him of the "claim" represented by the mortgage, "amount not computed," and stating that he would be pleased to have the administrator give consideration to the claim when offering the real estate for sale for the payment of debts; in presenting his petition for such sale, the administrator listed the mortgage as one of the debts; the order of court directed the sale "free of encumbrance," except certain taxes; all the advertisements so stated and at the sale the auctioneer made an announcement to the same effect. The auctioneer and purchaser both testified that the amount bid at the sale was on the basis of the property being sold free of all liens including the mortgage. That the property was so sold is borne out by the price paid as contrasted with the amount of the mortgage then thought to be $1,300, by the amount of the bond fixed by the court and by the pur-

chaser's unwillingness to pay the balance of the purchase price until the mortgage was satisfied.

Perhaps the court's order directing the sale free of all encumbrances was irregular, but no appeal from the confirmation of the sale was taken. Such an appeal could have been taken: Maslowski's Estate, 261 Pa. 484. The decree cannot now be collaterally examined or attacked nor set aside: Myers et al. v. Crick, 271 Pa. 399; Cierlinski v. Rys, 225 Pa. 312; Painter v. Henderson, 7 Pa. 48; Lockhart v. John, 7 Pa. 137; McPherson v. Cunliff et al., 11 S. & R. 422; Swartz, Admx., v. Crum, 110 Pa. Superior Ct. 102.

In Lockhart v. John, supra, it was contended that the order of sale was subject to collateral attack because the court had not required the administrator to give bond as required by the statute before confirmation of the sale. The court said this requirement is directory only and that the court's decree, although irregular, was not subject to a collateral attack. In Love's Estate, 4 Pa. Superior Ct. 556, 560, it was said that the statutory provision that a judicial sale cannot divest a first mortgage unless the mortgagee consents is directory only and not mandatory. It follows that our order directing such a sale without the mortgagee's consent being filed was irregular, but not subject to the collateral attack now made upon it.

Statutory provisions preserving the lien of a first mortgage at a judicial sale not made on said lien are for the benefit of the holder of the mortgage, and he may waive such right and consent that the sale may be made free and clear of the lien: In re McFadden's Estate, 191 Pa. 624, 627; Love's Estate, supra. In effect the mortgagee herein did waive his right and consent to the sale. This is evidenced by the letter written by the mortgagee's attorney to the administrator and the mortgagee's acceptance of payment from the proceeds of the sale. The only irregularity was that the court ordered a sale free of all liens without the mortgagee's consent being filed in court,

but equity will not permit the court's order or "the auctioneer . . . to dig a pit for the unwary purchaser [or administrator] to fall into": Crosson's Appeal, 125 Pa. 380, 385.

There is testimony in the instant case that the purchase price was fair and reasonable. There is no contrary evidence. Hence no one is hurt. As said in Love's Estate, supra, p. 561, exceptant herein "acquiesced in the sale and in the sufficiency of the price of the land . . . He made no complaint, when the return of sale was made . . . and is not heard in derogation of the bona fides of the sale or of the sufficiency of the price of the property sold, until the proceeds thereof are brought into court for distribution, and even then his complaint is not that there was bad faith, not that the price is insufficient, but that the lien of the . . . mortgage was not divested," notwithstanding the court's order and the understanding of the parties.

In Crosson's Appeal, supra, the administrator sold real estate for the payment of debts. At the sale, by direction of the administrator, the auctioneer announced that the property was subject to two mortgages, the exact amount of which was uncertain, and therefore he would sell the property as if clear and the purchaser would be allowed for any undischarged encumbrance as part payment on his bid. Sale was made for a sum sufficient to cover all liens and settlement effected by the purchaser paying the amount of his bid less what was due on the mortgage. The auditor surcharged the administrator the amount of the deduction, following Penn Square Building Association's Appeal, 81* Pa. 330, which held that a first mortgage is not divested and cannot be paid out of the proceeds of the sale. The court in Crosson's Appeal reversed the surcharge and dealt with the whole case as a court of equity, saying (pp. 384, 385):

"While the law as stated by the auditor is undoubtedly correct . . . yet equity will not permit the auctioneer, who is the agent of the seller at a sale of this kind, to dig

a pit for the unwary purchaser to fall into. . . . Under the facts of this case, this sale might well be set aside, but we think justice will be substantially accomplished by refusing this surcharge."

In commenting favorably upon Crosson's Appeal, the Supreme Court, by Mitchell, J., in Kreamer et al. v. Fleming et al., 191 Pa. 534, 538, said:

". . . it was based on the equitable result under the facts, and the controlling facts were that the property brought enough to pay all the incumbrances and be really clear as the purchaser supposed when he bid, and that there was nobody before the court [properly] complaining of injury by the result. What the court did was to refuse to apply the admitted general principle of law as an unbending rule to the prejudice of an innocent purchaser, or of the accountant who had got the full value of the land and distributed it to the proper parties. Had the facts been different, as e. g., if the purchase money had been insufficient to meet the incumbrances, or if a first mortgage holder had declined to recognize the discharge of his mortgage and stood on his legal right to have it undisturbed, a very different question would have been presented."

It will be readily observed that the foregoing is peculiarly applicable to the instant case. We feel entirely justified in reaching a similar conclusion, and because the orphans' court is a court of equity: Lonergan's Estate, 303 Pa. 142, 147; we should reach an equitable result. Under all the facts in the case we feel, as did the court in Crosson's Appeal, that "justice will be substantially accomplished by refusing this surcharge." On similar facts a similar result was reached in Hagan's Estate, 50 Pitts. 49, and in McClure's Appeal, 57 L. I. 308. . . .

And now, June 15, 1940, the exceptions to the auditor's report are overruled and dismissed; the report is confirmed; and distribution in accordance therewith is directed.