# Hartman's Appeal.

107  327
149  238
107  327
174  456
174  459
107  327
199  585

1. The first section of the Act of April 9th, 1872, (P. L. 47), giving to certain operatives in works, mines, manufactories or other business a preferred lien on said works, etc., in the event of their "sale or transfer. . . . . preceding the death or insolvency of such employer" must be so construed as to include any sale or transfer of said works, etc., during the lifetime or solvency of the employer. Subsequent death or insolvency need not be shown by the labor claimant. The lien attaches at the date of and because of the sale or transfer whether by execution or otherwise, and extends only to the specific works, mines, etc., in which the labor claimant was employed and to such other property of the employer as is used in carrying on the said business or in connection therewith.

2. The lien given by the third section of said Act "in all cases of the death, insolvency or assignment of any person or persons or chartered company. . . . . or of executions issued against them," extends to all property of the employer, whether such property be used in carrying on or in connection with the particular business, in which the labor claimant was employed, or not.

3. Where the employer is a firm or partnership, the lien given by the third section of said Act will extend to all the property owned by such firm or partnership or the members thereof jointly, whether used in carrying on or in connection with the particular business in which the labor claimant is engaged, or not; but such lien will not extend to the private property of the individual members of such firm or partnership.

4. A. was a member of the firm of A. & B., which was engaged in the manufacture of iron. At a time when he individually and the said firm were insolvent, he gave his individual judgment note to C. in payment of an individual debt. Judgment was entered on said note and on an execution issued thereunder certain private property of A., in no way connected with the business or property of the firm, was sold by the sheriff. The laborers employed by A. & B. claimed a preferred lien on the proceeds of said sale by virtue of the Act of April 9th, 1872, § 3.

    *Held,* that the claim was properly disallowed by the auditor, and the fund was correctly awarded to C., the plaintiff in the execution.

October 14th, 1884. Before MERCUR, C. J., TRUNKEY, STERRETT, GREEN and CLARK, JJ. GORDON and PAXSON JJ.. absent.

APPEAL from a decree of the Court of Common Pleas of *Lawrence county:* Of October and November Term, 1884. No. 83.

This was an appeal by George W. Hartman, trustee of Carrie T. Reis, from a decree of the said court sustaining the exceptions of certain labor claimants to the report of an Auditor, appointed to make distribution of a certain fund arising from a judicial sale of personal property belonging to William E. Reis, and awarding to said labor claimants the fund for distribution as preferred creditors under the Act of April 9th, 1872, § 3, P. L. 47.

[Hartman's Appeal.]

The facts were as follows : William E. Reis was a member of the firm of Reis Bros., which was engaged in the manufacture of plate and sheet iron. In 1883, at a time when he individually and the firm of Reis Bros. were both notoriously insolvent, he gave his individual judgment note to Geo. W. Hartman, as trustee of Carrie T. Reis in payment of a private individual debt, upon which note judgment was entered up, and a fi. fa. issued in November, 1883. Under this writ certain personal property of William E. Reis consisting of household goods used in his private residence and in no way connected with or used in the business of Reis Bros., were sold by the sheriff, and the proceeds constitute the fund for distribution. This fund was claimed on the one hand by the plaintiff in the execution and on the other hand by certain employees of the firm of Reis Bros., who contended before the Auditor that their wages for labor done in and about the business of Reis Bros. for six months preceding the insolvency and sale of the said personal property of William E. Reis constituted a lien on said property under the Act of April 9th, 1872, § 3, and should be first paid out of its proceeds.

The Auditor reported that the lien of the labor claimants upon the property of the firm of Reis Brothers did not extend to the personal property of an individual member thereof, and he accordingly awarded the fund for distribution to George W. Hartman, as trustee of Carrie Reis.

Exceptions filed to this report by the labor claimants were sustained by the court in the following opinion :

" The first section of the Act of April 9th, 1872, limits the lien of labor claims to six months immediately preceding the sale, by execution or otherwise, of the mine, manufactory, &c., and confines the lien to the mine, manufactory or business, or other property connected therewith in carrying on said business, to the time preceding the death or insolvency of the employer or employers. Nothing is said in this first section what limit shall be to the extent of the lien at or after the death or insolvency of the employer or employers of the labor. Preceding the death or insolvency of the employer or employers, the lien for labor is confined to the works, manufactories or business, or other property connected therewith in carrying on said business. But for the state of the case in regard to lien after death or insolvency of the employer or employers, we must look to the third section of the Act, which says that in all cases of death, insolvency or assignment of any person or persons, or chartered company engaged in operations as herein or heretofore mentioned, or of executions issued against them, the lien of preference mentioned in the first section of this Act, with like limitations and power,

shall extend to every property of said persons or chartered company. The first section shows to what property the lien of labor claims shall be confined preceding the death or insolvency of the employer; the third section shows that at death or insolvency of the employer the lien is extended to his ‘ every property.’ By this construction of the Act the exceptions to the Auditor’s report are sustained, and the fund for distribution is ordered to be applied to the labor claims found by the Auditor to be legal and just.”

Hartman thereupon took this appeal, assigning as error the said action and decree of the court.

*Dana* (with him *Long*), for the appellant.—The lien given by the Act of 1872 is against common right and in derogation of the common law, and as such must be strictly construed : Esterley’s Appeal, 54 Pa. St. 192 ; Dame’s Appeal, 62 Id. 417. Thus construed and interpreting its sections as *in pari materia*, it would seem clear that the Act of 1872 confined its lien for wages to “the said mine, manufactory, business, or other property in and about, or used in carrying on the said business, or in connection therewith.” The first section is very explicit, and in exact language so confines the lien. The second section prescribes the notice required to be given to the sheriff, in cases of executions and writs of a similar nature, and directs the officer to pay to “ such miners, &c.,” the amount each is justly and legally entitled to receive. The third section cannot be construed to extend the lien to all property of defendant, irrespective of its relation to or connection with the business. The decision, however, of the court below is rested exclusively on this section ; and the decision involves the position that the effect of the third section is to enlarge the lien given in the first, so as to cover all the property of defendants, real and personal, without reference to the connection it bears to the business. But the fourth section provides, as to mortgages : that “ no mortgage shall operate to impair or postpone the lien and preference secured to the wages and moneys mentioned in the first section of this Act,” which clearly implies that the lien is entirely by the first section. Besides, the proviso to the first section requires claimants to file their claims “ in the same manner as mechanic’s liens are now filed.” That is, specially against property whereon the work was done, while if the whole Act intended to give liens on all property of the defendant, as in the case of a judgment, it would not require filing, as in the case of a mechanic’s lien. The construction given by the learned court to the Act of 1872 would seem to lead to absurd and unjust conclusions. Where, for

instance, a person owned several distinct manufactories, in case of his death or insolvency all the employees in the different manufactories would have a lien on the whole property instead of on that manufactory alone in which they were employed. Again, if all the property of a defendant is bound for the wages of a class of servants, why exclude other classes? Why admit the lien of those workmen at the mill on Wm. E. Reis's household goods and exclude that of all his laborers, employed about a business that had no "fixed and permanent character," as was the case in Pardee's Appeal, 4 Out. 408? Suppose Wm. E. Reis resided in a rented house, then the effect of the construction complained of would be to give all the operatives in the mill for six months' wages a lien on the goods in the dwelling in preference to the warrant of the landlord for his rent. In Jacobs *v.* Woods, 14 W. N. C. 237, Judge BARNETT held, in Perry county, that neither under the Act of 1872 nor of 1883, had a hired man on a farm any lien on the goods on the farm sold on execution. Yet, if the decree below is sound, while a farmer's hand would have no lien, the hands at a mill or mine in which he happened to be a partner would have a lien on the stock, etc., on the farm.

The opinion of the learned Judge below seems to proceed on a false assumption. He assumes that the first section gives a lien of six months' duration preceding the death, execution, etc., and confines this lien to the goods in and about the business; but the lien given by the third section is intended to be the lien arising upon or after sale, death, etc., and this is intended to be extended to all property of a defendant. The truth is that the Act gives no lien whatever until the time of execution, death, assignment, etc. The six months mentioned is the duration of the time within which the wages claimed must have been earned, and not that within which the lien has been continuing. The section is very explicit: "All moneys that may be due" "for labor" "rendered," "by," etc., "for any period not exceeding six months immediately preceding," etc. Thus the six months expressly refers to the time within which the labor must be performed, and not that during which the lien has continued. The premise of the learned Judge failing, his conclusion has nothing to sustain it and must likewise fail. Up to the time of execution, etc., there is no lien on the goods, but the proprietor is perfectly free to dispose of the same. If there had been a continuing lien, it is difficult to perceive why it would not follow the goods to another place, and after the business was finished; this was negatived in Pardee's Appeal, *supra*. Besides, the lien given by the third section is the same lien given by the first; expressly "the lien mentioned in the first section."

While this is a case of first impression, and has never been directly decided by this court, yet there are several decisions under the Act of 1872, the reasoning of which is inconsistent with the position taken by the learned court below. Thus, in Ward's Appeal, 32 P. F. S. 270, execution was issued against King for his individual debt, and his interest in the partnership of King & Morris levied on and sold; laborers of King & Morris had no lien. It is difficult to see how, if all King's individual property was liable, this decision can be sustained. In Allison *v.* Johnston, 11 Norris 314, this court held the notice insufficient, for the reason, among others, that the notice did not indicate that the goods and chattels seized and sold were "property in and about, and used in carrying on the business, or in connection therewith." If the lien, after execution, extended, under the third section, to all property, certainly the notices need not contain such indication. In Jones's Appeal, 1 Chester Co. Rep. 582, this court held that, after receivership, the wages claim did not extend to a chose in action. The lien was expressly confined to that set forth in the first section of the Act of 1872: See also Pardee's Appeal, supra; and Pepper's Appeal, 2 Pennypacker 113.

*Winternitz* (with him *McConahy* and *Wallace*) for the appellee.—In passing the Act of 1872, the legislature realized that the manufacturing and mining interests of the state were carried on almost exclusively by partnerships. The property, in cases of insolvency, in and about the mine or manufactory, is usually insufficient to pay the claims of the laborers, as in this case. It consists of cars, tools, machinery, &c., which is not generally increased; while the individual property of the members of the firm is being constantly added to. For the purpose of preventing the operation of the rule in cases of the "insolvency" of a partnership, upon the claims of their laborers, the third section provides that in case of "insolvency" the lien of the laborer shall *extend* to *every property* of the employer or employers. Statutes are to be construed so as best to effectuate the intention of the makers: Commonwealth *v.* Fraim, 16 Pa. St. 163, and this statute, which is not penal but remedial, should be liberally construed in advancement of the remedy contemplated by the legislature: Dame's Appeal, 62 Pa. St. 417. Thus construed, it would seem clear that the first section of the Act of 1872 protects the laborer in case of a *sale and transfer* of the particular business, manufactory, &c., in which he is engaged, and the property in and about the same, or used in connection therewith, by giving him a lien on that *particular property* above all other creditors. The third section protects him, in case of death, insolvency, or

assignment, whether there is a sale and transfer or not, and in case of executions issued, by giving him a lien for his wages, not only on the *particular property* in and about the business, &c., but on every property of his employer. The "execution" of the first section is the "execution" directed against the *particular business*, &c., and by virtue of which the same is *sold and transferred;* while the "execution" of the third section is a general execution directed against all the defendant's property, whether in and about his business or not. This construction of the Act seems to reach its true meaning and spirit; its evident intention was to give to the wages of labor a preference over all other claims.

If the argument of the learned counsel for the execution creditor be correct, the firm of Reis Brothers might have taken all the money arising from the sale of the products of the mill, invested it in costly furniture or other private property, and thus exempt the fruits of their laborers from the lien of the Act of 1872. The very debt that the legislature intended to prefer would in this way be defeated, and the product of the laborer would be applied to the payment of other debts, which the Act of 1872 intended to postpone to his claim. Thus the whole end and spirit of this beneficent statute would be defeated.

The cases cited by counsel for the appellant involved merely the construction of the first section of the Act of 1872, except Jones's Appeal, 1 Ches. Co. Rep. 582 (s. c., Pitts. Leg. Jour: of May 9, 1883, p. 375), which is directly in our favor.

Mr. Justice CLARK delivered the opinion of the court, November 13th, 1884.

The fund for distribution is the proceeds of the individual personal property of William E. Reis, consisting of the furniture and other household goods contained in his dwellinghouse.

William E. Reis and George L. Reis were partners under the name and style of Reis Brothers, and were the owners and operators of an extensive sheet-iron mill or manufactory in the city of New Castle; in the carrying on of that business they employed a number of operators and laborers, to whom, at the time of the sale, they were indebted for labor rendered within six months preceding; the liabilities of Reis Brothers largely exceeded their assets; they were admittedly insolvent. The labor claimants, therefore, gave notice to the sheriff of their respective claims; the notices were in proper form, and the claims were correct in amount. No fact is controverted; the only question is whether or not the labor claimants employed in and about the work of the mills are entitled to a preference

under the Act of 9th April, 1872, in the distribution of the
proceeds of the individual estate of William E. Reis, which
was used by him in his dwelling-house, a mile or more distant
from the mill, and was not in any way used in or connected
with the mill.

The correct solution of this question involves the construc-
tion of the Act of 9th April, 1872, which is entitled " An
Act for the better protection of the wages of mechanics,
miners, laborers and others." As the law was, prior to 1872,
the owners or lessees of any works or mines, might, and they
frequently did, in anticipation of death or insolvency prefer
certain of their creditors, to the prejudice of the claims of
the mechanics and laborers in their employ; this preference
was often effected by direct and absolute sales or transfer of
their works or mines, and sometimes by means of execution
in the name of those whom they chose to prefer. The per-
sons, thus exposed to loss, in many cases, cannot vigilantly
assert their claims without hazarding their means of subsis-
tence, and they are generally of that class of our population
least able to bear the hardships which thus, frequently, they
were called upon to endure. It was doubtless to prevent the
recurrence of this evil that the Act of 1872 was passed.

The first section of the Act provides as follows: " That
all moneys that may be due, or hereafter become due, for
labor and services rendered by any miner, mechanic, laborer
or clerk, from any person or persons, or chartered company
employing clerks, miners, mechanics or laborers, either as
owners, lessees, contractors or underowners of any works,
mines, manufactory or other business where clerks, miners or
mechanics are employed, whether at so much per diem or
otherwise for any period not exceeding six months imme-
diately preceding the sale and transfer of such works, mines,
manufactories or business, or other property connected there-
with, in carrying on said business, by execution or otherwise,
preceding the death or insolvency of such employer or em-
ployers, shall be a lien upon said mine, manufactory, business
or other property in and about, or used in carrying on the
said business, or in connection therewith to the extent of the
interest of said owners or contractors, as the case may be, in
said property, and shall be preferred, and first paid out of the
proceeds of the sale of said mine, manufactory, business or other
property as aforesaid." It must be admitted that the language
here employed is obscure. It is somewhat difficult to understand
when we come to apply the statute, what is meant by a sale
or transfer " preceding death or insolvency of the employer."
When a sale or transfer has been made we know, if we take
the words in their widest signification, that it precedes the

death of the employer, if it be made in his lifetime, as it hath been appointed unto all men once to die; in the same sense, however, if made during solvency it may not precede insolvency, as that condition may never occur. Is the transfer, referred to, one made immediately preceding death or insolvency, if not immediately, then how long preceding the occurrence of these events respectively, and how in each case can the fact be determined in a distribution until one or both do actually intervene? The distribution cannot be delayed pending the event, and proof in many cases is rendered impossible. If we use the words in either of the more restricted senses suggested, the Act certainly fails of its effect; it is rendered incongruous and impracticable. After a careful examination of the provisions of this statute we are of opinion that by "a sale or transfer" "preceding the death or insolvency of the employer," is meant any sale or transfer during his lifetime and solvency. No other interpretation of this phrase is consistent with its proper application; such a sale may be said to precede death or insolvency when or if they subsequently occur. The lien created by this section attaches because of the transfer; it takes effect at the date of the transfer, no matter in what form it may be effected, whether by execution or otherwise, during the lifetime and solvency of the employer; and it is specific, being " upon the mine, manufactory, business or other property in and about, or used in carrying on the said business or in connection therewith," it is " preferred, and must be first paid out of the proceeds of the sale."

The purpose of this section, as we understand it, is to give the laborer a claim under certain limitations and conditions, upon the purchase money arising from the sale of any works, mines, manufactory or other business and property, specified in the Act, no matter by what device that transfer may be effected; and, as the sale and transfer referred to, is of the mine, manufactory, &c., it is against that mine, manufactory, &c., as the specific subject of sale that the lien attaches.

But the third section we think is intended to apply in a different state of affairs.

" In all cases of the death, insolvency or assignment, of any person or persons or chartered company, engaged in operations as hereinbefore mentioned, or of executions issued against them, the lien of preference mentioned in the first section of this Act, with the like limitations and powers, shall extend to every property of said persons or chartered company."

The first section, as we have already said, has special refer-

ence to sales or transfers of the mines, manufactory, &c.,
before death or insolvency, but the third section provides for
a preference, after death or insolvency, general assignment or
where execution is issued directly against the persons or com-
pany.  The "execution" named in the first section is such as
may be made the instrument of sale; it may be upon a judg-
ment or lien against a former owner, or as a mere means of
transmitting title, or may be in such other form as does not
denote the insolvency of the employer; whilst the execution
of the second section is such as is issued "against them,"
that is the employer, for the collection of his own proper
debt, such a writ, if executed by levy and sale, may justly be
regarded in general as denoting a condition of actual insolv-
ency.  In all such cases the lien of preference, mentioned in
the first section, is extended "to every property of said persons
or chartered company."  The employer may own other prop-
erty exclusive of the mine, manufactory, &c., and of the
property in and about, or used in carrying on the business or
in connection therewith.  He may own a valuable estate in
no way connected with business; if so the lien is extended to
such property.  But in the case of a firm or partnership, the
property to which the lien of the first section is thus extended
by the third, is the property of the firm, or of the employers
jointly, and not of the individuals constituting it.  If the
legislators had intended otherwise, they would certainly have
said so; they have provided that the lien "shall extend to
every property of said persons or chartered company;" the
persons are spoken of collectively and jointly, not severally
or separately.  The lien is not extended to "every property"
of each and all of said persons, or to the property of said
persons, respectively, or in such other form as to indicate an
intention to charge the individual estate of the partners.  The
statute, it is true, is remedial, and although in derogation of
the common law, and in some sense against common right, it
is entitled to a fair interpretation in advancement of the
remedy provided: Dame's Appeal, 62 Pa. St. 417.  We must,
however, as far as we can, discover the legislative intention
from the light which the statute itself furnishes, and we fail
to find in its expression any clear intention to charge the
individual estate of each of several partners; nor is there
anything in the nature of the evil to be suppressed, or of the
remedy provided which demands that any larger effect should
be given to the statute than its plain provisions import.  It is
a familiar and well established rule of equity, in marshalling
the assets of insolvents, that when there are partnership
property and partnership creditors, and separate property and

separate creditors, each class must look to their respective estates for payment, in the first instance. In the absence of a clear expression to that effect we cannot believe that the legislature intended, in the manner and to the extent suggested in the argument of the appellees to abrogate this rule.

> The decree is therefore reversed, the report of the Auditor confirmed, and it is ordered that the money be paid out accordingly, and that the costs of this appeal be paid by the appellees.