Morrison's Estate.

Argued September 29, 1941. Before Schaffer, C. J., Maxey, Drew, Linn, Stern, Patterson and Parker, JJ.

*Leo H. McKay*, with him *C. E. Brockway*, of *Brockway, Whitla & McKay*, for appellants.

*Nathan Routman*, with him *Myron W. Jones* and *Claude T. Reno*, Attorney General, for appelleee.

Opinion by Mr. Justice Parker, November 24, 1941:

Trustees for the depositors of a closed bank, the appellants, and the Commonwealth are each claiming as judgment creditors a balance in the hands of the executrix of the estate of Frank Morrison, deceased, which balance arose from the sale of real estate of the decedent for the payment of his debts.

Frank Morrison and his nephew, Francis Hanson, as partners under the firm name of F. Hanson and Company, operated a gasoline station in Mercer County. The partnership, for twelve months during 1927 and 1928, failed to pay over to the Commonwealth monies collected as gasoline taxes from their customers. After settlement of the taxes due, the Commonwealth, pursuant to section 12 of the Act of April 14, 1927, P. L. 287 (since repealed), filed a certificate of lien in the amount of $5,291.49 in the office of the prothonotary of the Court of Common Pleas of Mercer County against Frank Morrison and F. Hanson, doing business as F. Hanson and Company. Prior to the death of Morrison, the Commonwealth issued a scire facias on its lien and, on Novem-

ber 18, 1929, had judgment entered thereon for want of an affidavit of defense. That judgment has since been revived. Appellants, on December 11, 1929, entered judgment against Morrison in the amount of $7,875.00. Morrison died October 6, 1931, owning several parcels of land, all acquired prior to 1929. After sale of the real estate under an order of the Orphans' Court, an auditor awarded the balance in the hands of the executrix to the Commonwealth. The orphans' court sustained the auditor and the trustees have appealed.

1. The appellants argue that since the Commonwealth's judgment, if valid, is a "debt due the Commonwealth", it can be paid only after all other debts are paid under the rule as to priorities established by section 13[a] of the Fiduciaries Act of 1917, P. L. 447 (20 PS §501). While that act applies to assets in the hands of an executor or administrator and has to do primarily with personalty, it also controls in the distribution of the proceeds of real estate where they come into the hands of the fiduciary by reason of a sale for the payment of debts and there are no record liens involved. Section 13[a] was not intended to disturb liens against real estate entered of record prior to the decedent's death. This represents the settled policy of our decisions covering many years. That section is but a reënactment of section 21 of the Act of February 24, 1834 (1 Purdon, p. 1103), which was founded on section 14 of the Act of April 19, 1794, 3 Sm. L. 143. In *Ramsey's Appeal*, 4 Watts 71, 74, we said: "The fund which arises from the sale of the real estate must be paid to the judgment-creditors, according to their respective priorities in point of time." To the same effect is *Boud's Appeal*, 2 Pennypacker 241. Also, see *Hocker's Estate*, 14 Phila. 659, and *Wade's Appeal*, 29 Pa. 328. The preferences created by our intestate laws in favor of funeral expenses, etc., have never been permitted to postpone record liens, even though personalty may have been lacking for the payment of such preferences. Just so, the order of priorities

fixing payments to the Commonwealth last in order cannot be construed as taking from the owner of record liens priorities existing at the date of death. The claim of the Commonwealth is not a simple debt, but a judgment of record acquired before the decedent's death, and by reason of its prior entry it is entitled to the fund.

It may be added that section 15[g] of the Fiduciaries Act (20 PS §527), which provides for the automatic revival for five years of judgments which were liens at the date of death, states that "such judgments shall, during such term, rank according to their priority at the time of such death", and makes no exception with respect to judgments in favor of the Commonwealth. This would seem to be a clear indication that judgments continue to have priority according to their rank.

2. It is next suggested by appellant that the Commonwealth does not have a valid judgment. This contention is based on the assertion that there is no statutory authority for the issuing of a scire facias or entering of a judgment as was done here, and that therefore all steps beyond the mere filing of the claim were void. We are of a contrary opinion. The 12th section of the Act of April 14, 1927, supra, declared that "all taxes collected by a dealer or consumer for the Commonwealth shall be considered a public account, after being settled in the manner herein prescribed, and, as such, shall be a lien upon the franchise or property, both real and personal, of any dealer or consumer, after the same has been entered and indexed of record by the prothonotary of the county where the dealer's or consumer's franchise or property is situate." The authority for the subsequent proceedings followed here is found in the Act of April 27, 1909, P. L. 250 (72 PS §3343), which provides as follows: "In all cases where settlements for bonus or taxes have been or may hereafter be made in favor of the Commonwealth, and liens therefor are entered in any court of common pleas of any county, it shall be lawful for writs of scire facias to issue thereon

and be prosecuted to judgment and execution, in the same manner as such writs are ordinarily employed."

We find no merit in the contention of appellants that these clear provisions were rescinded by section 1207 of the Fiscal Code of 1929, P. L. 343 (72 PS §1207), which provides that "the Department of Revenue shall collect the liquid fuels tax as provided in the act or acts imposing said tax, and the procedure for making such collections, as well as the lien of said tax, shall be as provided in said act or acts." Appellants interpret the statute last referred to as strictly limiting the procedure for recovery of such taxes to the method provided in the applicable statutes and argue that since the Act of 1927 contained no provision for a scire facias to reduce the lien to judgment, the Commonwealth's judgment is without statutory authority. We agree with the learned auditor in his conclusion that section 1207 is in the nature of a reference to other fiscal statutes not repealed by the act, rather than an intent to limit or narrow any procedure set forth in the acts referred to. Once the lien had been acquired under the Act of 1927, the Commonwealth was free both before and after the passage of the Fiscal Code to issue a scire facias under the Act of 1929 to reduce the lien to judgment. As we have shown that the statutes provided for the procedure which was here pursued, we cannot concur in the argument that the effect of the Fiscal Code was to repeal such procedure merely because the Liquid Fuels Tax Act of 1927 did not specifically refer to the issuance of a scire facias.

3. The final position of the appellants is that even if the Commonwealth has a valid judgment, it is only a lien upon partnership property owned by F. Hanson and Company as such, and that at least it was not a lien upon the separate property of Frank Morrison as against another judgment creditor. They argue that the 12th section of the Liquid Fuels Tax Act of 1927, supra, provided that "all taxes collected by a dealer shall be a lien on the franchise or property, both real and personal, of

any dealer", that property of the *dealer* means property used by the partnership, and that the meaning cannot be extended so as to cover property of the individual partners not used in the partnership business.

Our problem is to determine what is meant by the phrase "property of any dealer", and the natural inquiry is first as to the sense in which the word "dealer" is used. Is the dealer F. Hanson and Company, or Frank Morrison and F. Hanson, doing business as F. Hanson and Company? Section 1(b) of the Liquid Fuels Tax Act states that "the word 'dealer' shall include any person, firm, co-partnership . . ." There the legislature recognized that "dealer" might possibly connote an individual and, to remove all question, was attempting only to make it clear that it meant to include all forms of business organization, though for convenience the word "dealer" was used throughout the statute. We deem it to be the law in Pennsylvania and the approved opinion in most other jurisdictions that a partnership is not recognized as an entity like a corporation, that it is not a legal entity having as such a domicile or residence separate and distinct from that of the individuals who compose it. It is rather a relation or status between two or more persons who unite their labor or property to carry on a business for profit. This is subject to an apparent exception, for while a partnership as such is not a person, it, as a matter of fact, is treated by a legal fiction as a quasi person or entity for such purposes as keeping of partnership accounts and marshaling assets. It is so treated under the law of this Commonwealth and under the federal Bankruptcy Act. We have held that while it is customary for a partnership to adopt a name in which a business is conducted, a partnership may exist as such without being designated by any name: *Overholt's Appeal*, 12 Pa. 222, 226. Until the promulgation of Pa. R. C. P. 2128, a partnership could not be sued in its firm name, and even yet, under Pa. R. C. P. 2127, partners must be named individ-

ually in actions by a partnership. We are here dealing with the extent of a statutory lien on real estate which has ripened into a judgment, and there is not involved a marshaling of assets. Since under our law F. Hanson and Company is not a separate entity, it would appear that it was F. Hanson and Frank Morrison who were the dealers and that it was therefore their property which was subject to a lien entered by virtue of the Liquid Fuels Tax Act of 1927, whether such property was used in the partnership business or individually owned.

The circumstances present here and a view of the entire statute and the Uniform Partnership Act throw further light on the legislative intention. The dealer merely acts as a collector for the tax imposed on his patrons. It is agreed that the partnership collected the amount for which judgment was entered and therefore received money belonging to the Commonwealth which it misapplied and failed to pay over to the Commonwealth. Section 14 of the Uniform Partnership Act of 1915, P. L. 18 (59 PS §36), provides that "the partnership is bound to make good the loss . . . (b) Where the partnership in the course of its business receives money or property of a third person, and the money or property so received is misapplied by any partner while it is in the custody of the partnership," and by section 15 of the same act (59 PS §37), it is provided that "all partners are liable —(a) Jointly and severally, for everything chargeable to the partnership under sections thirteen and fourteen." The liability of the individual partners for misappropriation of the taxes collected is clear. While this is not controlling in determining the extent of the lien and judgment involved, it throws light on the problem and tends to show that our conclusion is in harmony with the legislative intent.

The appellant relies very strongly upon *Hartman's Appeal*, 107 Pa. 327, and *Rothwell v. Kremer & Hoffman*, 95 Pa. Superior Ct. 36, cases involving a construction of wage claim acts which gave to laborers, in the event of

the sale of property of the employers, a preferred claim on the proceeds. While a casual consideration of those cases might raise some doubts as to the correctness of our conclusion, when the cases are carefully examined and the principles involved are considered, the difficulties disappear.

In *Hartman's Appeal*, supra, this court was construing the Act of April 9, 1872, P. L. 47. The legislature, recognizing a condition whereby owners of mines and factories, in anticipation of death or insolvency, were preferring certain of their creditors by sales of their property or by means of execution in the names of those whom they wished to prefer, enacted the statute giving wage earners arbitrary preferences. The first section of the act gave to wage earners a first lien on the proceeds of any transfer whether by sale or execution of any property used in carrying on the business where the wage earner was employed, if such transfer was made while the employer was alive and solvent. The third section provided that if the "person or persons or chartered company" [employers] were dead or insolvent, the lien of preference should "extend to every property of said persons or chartered company." The controversy was between wage claimants and individual creditors of a member of an insolvent partnership, and we held that the lien provided by the third section extended to all the property of the partnership whether used in the particular business or not, but not to the property of the individual partners. We there said (p. 335) : "It is a familiar and well established rule of equity, in marshalling the assets of insolvents, that when there are partnership property and partnership creditors, and separate property and separate creditors, each class must look to their respective estates for payment, in the first instance. In the absence of a clear expression to that effect we cannot believe that the legislature intended . . . to abrogate this rule."

The statute in that case by the third section provided for an arbitrary preference arising after insolvency in

derogation of the rights of other creditors. We held that the legislature did not intend to displace the rights of individual creditors to individual property for that was not the evil to be corrected. In the present case, the statute provides for a lien which in no way displaces any established legal rights. The debt is one arising from misappropriation of funds in the hands of the partnership and, by the Uniform Partnership Act, the debt was made that of the individual partners as well as that of the partnership. It is reasonable, therefore, to assume that the legislature intended the lien to extend to the property of the individual members of the firm. In so holding another lien or claim is not displaced, but the Commonwealth is given a lien provided and after it places its claim on record so that it is notice to the world.

The Rothwell case merely followed the earlier case and applied the same principles as were applied in the Hartman case to a later statute. The reasons given in support of the rule laid down in the Rothwell and Hartman cases are not applicable here.

The decree of the court below is affirmed at the costs of the appellants.