## Hoch Estate

*Snyder, Wert & Wilcox*, for accountant.
*Francis J. Gildner*, for exceptant.

GEARHART, P. J., February 20, 1952.—Decedent died March 27, 1951. Letters testamentary were granted to Clarence R. Ritter, who has filed his first and final account. The estate is insolvent.

The accountant charges himself with $389.12 in the personal account and $2,500 in the real estate account. The accountant proposes to take credit in the personal account for various expenditures in the amount of $944.68, and in the real estate account credits in the amount of $2,193.25. Included in this latter amount is a credit in favor of the Department of Public Assistance in the amount of $1,992.80. The Commonwealth of Pennsylvania has filed objections to all credits claimed other than those for administration expenses. The total credits to which they object amount to $539.10.

The objections are seven in number. In substance they amount to this, viz., that the Commonwealth held liens against the real estate of decedent at the time of her death, and therefore they were entitled to priority of payment. Each judgment lien was in the amount of $2,000; one being to September term, 1947, no. 577, and the other to June term, 1950, no. 554, in the Court of Common Pleas of Lehigh County, Pa.

The claim of the Commonwealth is for public assistance paid to Katie Hoch, a sister of decedent, from January 8, 1938, to February 19, 1946, in the amount of $1,531.30, and for assistance paid to decedent herself from March 24, 1945, to March 20, 1951, in the amount of $1,992.80, or an aggregate sum of $3,524.10.

The Commonwealth's position is that they are entitled to priority of payment out of the proceeds of real estate by reason of the fact that their claim has a judgment lien against the real estate at the death of decedent. It should be stated parenthetically that the real estate was sold for $2,500 after the death of decedent for the payment of debts.

The accountant contends that an indigent is entitled to a decent burial—indeed, that the hospital bill, the grocer bill, the milk bill, and the tombstone all should be paid before the Commonwealth is reimbursed. They cite the Fiduciaries Act of April 18, 1949, P. L. 512, sec. 622, 20 PS §320.622. This section deals with distribution of assets of an estate when they are insufficient to pay all claims in full. The order of preference therein stated is:

1. The costs of administration;

2. The family exemption;

3. The costs of decedent's funeral and burial, and the costs of medicine furnished to him within six months of his death, of medical or nursing services performed for him within that time, and of services performed for him by any of his employes within that time;

4. The cost of a gravemarker;

5. Rents for the occupancy of decedent's residence for six months immediately prior to his death;

6. All other claims, including claims by the Commonwealth.

This section of the Fiduciaries Act is based on section 13 of the Fiduciaries Act of 1917. Section 13(*a*) of the Fiduciaries Act of 1917, P. L. 447, 20 PS §501, was construed in Morrison's Estate, 343 Pa. 157. In that case the appellants advanced the same argument that the accountant is making in this case. There it was claimed that since the judgment was a debt to the Commonwealth, it must be paid after all other debts are paid, under the rule as to priorities established by section 13 of the Fiduciaries Act of 1917.

Said the Supreme Court in answer to that argument (p. 159):

"While that act applies to assets in the hands of an executor or administrator and has to do primarily

with personalty, it also controls in the distribution of the proceeds of real estate where they come into the hands of the fiduciary by reason of a sale for the payment of debts and *there are no record liens involved.* Section 13(a) was not intended to disturb liens against real estate entered of record prior to the decedent's death. This represents the settled policy of our decisions covering many years." (Italics supplied.)

And quoting from Ramsey's Appeal, 4 Watts 71, 74, the Supreme Court continued:

" 'The fund which arises from the sale of the real estate must be paid to the judgment-creditors, according to their respective priorities in point of time' . . . The preferences created by our intestate laws in favor of funeral expenses, etc., have never been permitted to postpone record liens . . . Just so, the order of priorities fixing payments to the Commonwealth last in order cannot be construed as taking from the owner of record liens priorities existing at the date of death. The claim of the Commonwealth is not a simple debt, but a judgment of record acquired before the decedent's death, and by reason of its prior entry it is entitled to the fund."

It is pertinent to observe that section 15(g) of the Fiduciaries Act of 1917 has been substantially reenacted in the Fiduciaries Act of April 18, 1949, P. L. 512, sec. 612. This section provides automatically for the extension of the lien of a judgment for one year following the death of decedent. It further provides, inter alia: "During this period, the judgment shall rank according to its priority at the time of death . . .". As pointed out in Morrison's Estate, supra, at page 160, the new section, like the old, makes no exception with respect to judgments in favor of the Commonwealth, and this would seem to be a clear indication

that judgments continue to have priority according to their rank.

In Engle's Estate, 344 Pa. 535, it was held that the order of priority established by section 15(a) of the Fiduciaries Act of June 7, 1917, P. L. 447, did not apply to or affect judgments entered of record prior to decedent's death, including judgments in favor of the Commonwealth, where the proceeds of real estate bound by such judgments are being distributed. Here we are distributing proceeds of real estate bound by the judgment lien of the Commonwealth.

Accordingly, the Commonwealth's objections are sustained and the following claims are disallowed:

| | |
|---|---|
| Clarence Ritter, funeral | $340.00 |
| Allentown Hospital | 73.00 |
| George Stephen, grocer | 6.00 |
| Ted Iobst, milk | 27.85 |
| Merritt Lumber Co. | 17.25 |
| Tombstone | 75.00 |
| Total | $539.10 |

The Commonwealth makes no objection to the credits claimed for taxes and administration expenses, which take priority in payment under section 622 of the Fiduciaries Act already referred to.

The effect of sustaining the Commonwealth's objections will be to strike out credits in the amount of $539.10. This leaves $606.03 on the credit side to which no objection is made. Subtracting this latter sum from the total of $2,889.12, which is the amount with which the accountant charges himself, there is a balance for the Commonwealth of $2,283.09.

Accordingly, the account is confirmed subject to what we have stated in the body of this adjudication. The exceptions of the Commonwealth are sustained and we now award them on account of their judgment liens the balance of $2,283.09.