In re ESTATE OF Charles S. LANDIS.

Appeal of PNC Bank, National Association.

Superior Court of Pennsylvania.

Argued Oct. 30, 2013.

Filed Jan. 15, 2014.

Daniel J. Tobin, Philadelphia, for appellant.

Joseph A. Chellew, III, Perkasie, for Gilbert, appellees.

BEFORE: GANTMAN, J., SHOGAN, J., and PLATT, J.*

OPINION BY GANTMAN, J.:

Appellant, PNC Bank, National Association ("PNC"), appeals from the order entered in the Montgomery County Orphans' Court, which approved the first account and recommended distribution of the estate assets of the Estate of Charles S. Landis, deceased ("the Estate"). We vacate and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. In March 2004, Charles S. Landis ("Decedent"), in exchange for a loan of $138,450.00 on his residential real property located in Souderton, Montgomery County, granted a mortgage to Mortgage Investors Corporation. The mortgage was recorded as a first lien on the real estate on March 24, 2004.

Decedent died testate on May 31, 2011. Robin Lee Gilbert ("Executrix") admitted Decedent's will to probate and, on August 1, 2011, the Montgomery County Register of Wills granted Letters Testamentary to Executrix. At Decedent's death, the 2004 mortgage was the first and only secured lien on the property. PNC obtained the mortgage by virtue of assignment.

On December 21, 2011, Executrix filed a petition for leave of court to sell the mortgaged real property, pursuant to 20 Pa. C.S.A. § 3353. In her petition, Executrix estimated the assets of the Estate comprised of cash accounts of $6,500.00 and the mortgaged real property. Executrix approximated the Estate's debts at nearly $200,000.00, including the mortgage lien PNC held on the real property. In the petition, Executrix claimed the Estate owed $117,320.19 on PNC's mortgage lien. In essence, Executrix claimed the Estate was insolvent.

The Orphans' Court issued a preliminary decree and citation to PNC to show cause why the sale Executrix requested should not be allowed on December 22, 2011. PNC filed no objections to the petition or the sale. The court issued an uncontested decree, granting Executrix's petition on February 2, 2012. In its decree, the court authorized a "judicial sale" under 20 Pa.C.S.A. § 3353 and discharged all liens on the real property, so the property could be transferred with a clear title. The sale on the real property closed on March 6, 2012.

On November 15, 2012, Executrix filed an account of the Estate from the period May 31, 2011 (Decedent's death) to November 6, 2012. In that account, Executrix valued the Estate's principal at $131,967.40. Of that principal amount, Executrix listed $120,761.69 as proceeds from the sale of Decedent's Souderton real property. Executrix also identified $107,924.64 in funds available for distribution. The account included a proposed distribution of the Estate, in which the Estate would pay first and in full the costs of estate administration, Executrix's commission, attorneys' and accountant's fees, as well as outstanding funeral and medical expenses. The account listed PNC as a "Class 6 creditor" pursuant to 20 Pa.C.S.A. § 3392 (relating to priority of unsecured creditors of estate).

On December 17, 2012, PNC filed a petition for distribution of the judicial sale proceeds, arguing PNC was entitled to the entire proceeds of the sale, as PNC was the only secured lienholder of the real property. PNC estimated the amount due

---

* Retired Senior Judge assigned to the Superior Court.

under the mortgage lien was $123,237.42. The court immediately issued a preliminary decree directing Executrix to show cause why the Estate should not distribute to PNC the entire proceeds of the judicial sale. On December 24, 2012, PNC also filed objections to the November 2012 account and proposed distribution of the estate assets.

Executrix filed a petition for adjudication, including Executrix's proposed schedule of distribution on January 7, 2013. In the distribution, Executrix again listed PNC as a "Class 6 creditor" pursuant to 20 Pa.C.S.A. § 3392 and subordinated PNC's position in the distribution scheme to the claims of several unsecured creditors of the Estate. The distribution allocated to PNC $18,223.10, or 99.6% of the remainder of the Estate. On January 25, 2013, the court dismissed PNC's December 17th petition for distribution as unnecessary in light of PNC's filed objections to the account and proposed distribution. That same day, the court ordered the parties to file memoranda of law outlining their respective positions concerning PNC's objections.

On March 12, 2013, the court entered an order confirming Executrix's account and ordered distribution of the Estate according to Executrix's proposal. The court determined the "judicial" sale of Decedent's real property extinguished PNC's lien outright, along with its right of first priority to distribution of the net sale proceeds. PNC timely filed a notice of appeal on April 8, 2013. That same day, PNC filed an emergency petition to stay the trial court's order pending appeal, which the court granted on April 11, 2013. The trial court did not order, and PNC did not file, a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

PNC raises three issues for our review:

DID THE [ORPHANS'] COURT ERR BY RULING THAT A JUDICIAL SALE OF THE DECEDENT'S PROPERTY CONDUCTED PURSUANT TO 42 PA.C.S.A. § 8152 RESULTED IN "EXTINGUISHMENT" OF BOTH PNC'S FIRST–LIEN MORTGAGE AS WELL AS PNC'S FIRST–PRIORITY RIGHT TO RECEIVE DISTRIBUTION OF THE PROCEEDS REALIZED FROM THE SALE OF THE PROPERTY, AND INSTEAD AWARDING DISTRIBUTIONS IN ACCORDANCE WITH A SCHEDULE DESIGNATING PNC AS A "CLASS 6 CLAIMANT" SUBORDINATE TO THE CLAIMS OF OTHER UNSECURED CREDITORS PURSUANT TO 20 PA.C.S.A. § 3392?

WAS PNC, AS HOLDER OF A MORTGAGE CONSTITUTING A FIRST–PRIORITY LIEN ON THE DECEDENT'S PROPERTY AS OF THE DATE OF DEATH, ENTITLED TO FIRST PRIORITY IN THE DISTRIBUTION OF THE NET PROCEEDS FROM THE JUDICIAL SALE OF THE PROPERTY, AND HENCE OF THE ESTATE, UNDER PENNSYLVANIA LAW?

SHOULD THE [ORPHANS'] COURT'S INTERPRETATION OF 42 PA.C.S.A. § 8152 BE REJECTED BECAUSE IT CONTRADICTS ESTABLISHED CANONS OF STATUTORY CONSTRUCTION UNDER PENNSYLVANIA LAW BY RENDERING SECTION 8152 UNCONSTITUTIONAL, AS APPLIED, AND BY PRODUCING AN ABSURD AND UNREASONABLE RESULT?

(PNC's Brief at 4).

For purposes of disposition we combine PNC's issues. Initially, PNC argues 42 Pa.C.S.A. § 8152 dictates that judicial sales of real property do not generally

impair prior mortgage liens. PNC avers Section 8152(b) allows for the possibility that a judicial sale divests a mortgage lien, if the court authorizes such divestiture under two sections of the Probate, Estates and Fiduciaries ("PEF") Code. PNC contends the first of these sections, 20 Pa. C.S.A. § 3353, does not address the distribution of sale proceeds. PNC maintains Section 3353 provides only that the court may authorize a judicial sale if the court finds the sale is necessary for the proper administration and distribution of the estate. PNC alleges the second provision, 20 Pa.C.S.A. § 3357, allows a court to discharge mortgage liens pursuant to a judicial sale only with the lienholder's written consent. PNC avers it did not consent in writing to the court's discharge of its mortgage lien through the judicial sale. PNC submits the purpose of Section 8152 is to transfer the real property with clear title to the purchaser. PNC maintains Section 8152 does not go so far as to permit the court to extinguish a secured creditor's lien and lien priority against the proceeds of the sale. PNC claims the court incorrectly interpreted 42 Pa.C.S.A. § 8152 along with the related sections of the PEF Code to extinguish PNC's lien and as well as its priority as to the proceeds of the sale.

Additionally, PNC argues the lien on the real property was the first and only secured lien at the time of Decedent's death, which entitles PNC to first priority to the proceeds from the judicial sale of the property. PNC asserts, as a secured creditor, its rights are superior to those of unsecured creditors listed in 20 Pa.C.S.A. § 3392. PNC maintains Section 3392 does not even apply to secured creditors, as Section 3392 establishes an order of priority only for unsecured creditors against insolvent estates. Likewise, under the general provision 20 Pa.C.S.A. § 3381, PNC avers its rights as a secured creditor are superior to those of unsecured creditors because Section 3381 does not allow a court to construe the PEF Code to impair a secured claim. PNC claims the court erred by applying Section 3392 to subordinate PNC's secured claim. PNC asserts the court erroneously relied on *Frattone Estate*, 25 Fiduc.Rep.2d 90 (Montg.Co. 2005) to confirm Executrix's proposed distribution. PNC submits the court should have ordered the Estate to distribute the full net proceeds from the judicial sale to PNC because PNC's secured claim exceeded the Estate's available funds.

Finally, PNC contends its lien is a constitutionally protected property interest under the Fifth Amendment of the United States Constitution, and the destruction of the lien is an impermissible taking under the Fifth Amendment. PNC avers the court's interpretation of 42 Pa.C.S.A. § 8152 also violates the Contracts Clause of the United States Constitution. PNC maintains the court's order deprived PNC of its contractual right to recover on its debt and served no governmental purpose. In essence, PNC contends the court's interpretation of the relevant statutes violates PNC's constitutional rights. PNC claims the court's interpretation of Section 8152 would require mortgage lenders to consider factors like health and actuarial tables when deciding to issue a loan. PNC further states the court's interpretation produces an absurd and unreasonable result, in violation of the Pennsylvania Statutory Construction Act. Based on these assertions, PNC concludes the court erred in interpreting 42 Pa.C.S.A. § 8152 and the related PEF Code provisions to extinguish PNC's mortgage lien by virtue of the judicial sale and to subordinate PNC's claim against the Estate to those of other unsecured creditors in the distribution of the net proceeds of that sale. We agree.

Our standard and scope of review are as follows:

Our standard of review of the findings of an [O]rphans' [C]ourt is deferential.

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions.

*In re Estate of Harrison*, 745 A.2d 676, 678–79 (Pa.Super.2000), *appeal denied*, 563 Pa. 646, 758 A.2d 1200 (2000) (internal citations and quotation marks omitted). "[T]he Orphans' [C]ourt decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa.Super.2003), *appeal denied*, 577 Pa. 722, 847 A.2d 1287 (2003).

This appeal involves the intersection of several statutes as follows:

**§ 8152. Judicial sale as affecting lien of mortgage**

(a) **General rule.**—Except as otherwise provided in this section, a judicial or other sale of real estate shall not affect the lien of a mortgage thereon, if the lien of the mortgage is or shall be prior to all other liens upon the same property. . . .

\* \* \*

(b) **Property of a decedent, etc.**—A judicial sale of the property shall divest the lien of a mortgage to the extent authorized by the court pursuant to the following provisions of Title 20 (relating to decedents, estates and fiduciaries):

Section 3353 (relating to order of court).

Section 3357 (relating to title of purchaser).

\* \* \*

42 Pa.C.S.A. § 8152. Section 3353 of the PEF Code provides:

**§ 3353. Order of court**

When the personal representative is not authorized to do so by this code or is denied the power to do so by the governing instrument, if any, or when it is advisable that a sale have the effect of a judicial sale, he may sell any real or personal property of the estate, including property specifically devised, at public or private sale, or may pledge, mortgage, lease, or exchange any such property, or grant an option for the sale, lease, or exchange of any such property, under order of the orphans' court division of the county where letters testamentary or of administration were granted, upon such terms and upon such security and after such notice as the court shall direct, whenever the court shall find such sale, pledge, mortgage, lease, exchange, or option to be desirable for the proper administration and distribution of the estate.

20 Pa.C.S.A. § 3353. Section 3357 of the PEF Code in relevant part provides:

**§ 3357. Title of purchaser**

\* \* \*

(b) **Effect of certain circumstances.**—Persons dealing with the personal representative shall have no obligation to see to the proper application of the cash or other assets given in exchange for the property of the estate. Any sale or exchange by a personal representative pursuant to a decree under

section 3353 shall have the effect of a judicial sale, but the court may decree a sale or exchange freed and discharged from the lien of any mortgage otherwise preserved from discharge by existing law, if the holder of such mortgage shall consent by writing filed in the proceeding . . . . . . .

20 Pa.C.S.A. § 3357(b). Section 3381 of the PEF Code provides:

### § 3381. Liens and charges existing at death not impaired

Nothing in this code shall be construed as impairing any lien or charge on real or personal estate of the decedent which existed at his death.

20 Pa.C.S.A. § 3381. Additionally, Section 3392 of the PEF Code provides:

### § 3392. Classification and order of payment

If the applicable assets of the estate are insufficient to pay all proper charges and claims in full, the personal representative, subject to any preference given by law to claims due the United States, shall pay them in the following order, without priority as between claims of the same class:

(1) The costs of administration.

(2) The family exemption.

(3) The costs of the decedent's funeral and burial, and the costs of medicines furnished to him within six months of his death, of medical or nursing services performed for him within that time, of hospital services including maintenance provided him within that time, of services provided under the medical assistance program provided within that time and of services performed for him by any of his employees within that time.

(4) The cost of a gravemarker.

(5) Rents for the occupancy of the decedent's residence for six months immediately prior to his death.

(5.1) Claims by the Commonwealth and the political subdivisions of the Commonwealth.

(6) All other claims.

20 Pa.C.S.A. § 3392.

■ Under Section 3357 of the PEF Code, a court may discharge existing mortgage liens upon the sale property if the mortgagee consents by writing filed in the court during the administration proceedings of the relevant estate. 20 Pa.C.S.A. § 3357; *In re Jones' Estate*, 275 Pa. 143, 145–46, 118 A. 647, 647–48 (1922) (citing prior enactment of 20 Pa.C.S.A. 3357; holding judicial sale which discharges mortgagee's secured lien existing prior to decedent's death against sale property entitles mortgagee to distribution of sale proceeds). If the mortgagee provides written consent, it is not necessary for the mortgagee to file that consent before the court enters the preliminary order for the judicial sale. *Id.*

■ Even in the absence of a mortgagee's consent by writing to a judicial sale, the Orphans' Court may still authorize the sale and discharge all liens upon the sale property when the judicial sale purchase price is fair and reasonable. *In re Mosely's Estate*, 39 Pa. D. & C. 159, 162–63 (Cumb.Co.1940) (interpreting previously enacted version of 20 Pa.C.S.A. § 3357 to authorize judicial sale divesting subject property of liens when mortgagee did not consent by writing). "[T]he statutory provision that a judicial sale cannot divest a first mortgage unless the mortgagee consents is directory and not mandatory." *Id.* at 162 (citing *In re Love's Estate*, 4 Pa.Super. 556, 560 (1897)). So, the mortgagee may waive its right to contest a judicial sale, or a mortgagee can consent to a judicial sale that divests its

lien from the real property, because Section 3357 serves to benefit the mortgagee and preserves its secured lien. *Id.* Additionally, a mortgagee may consent by accepting payment of the proceeds of the sale. *Id.*

 When real estate sells in a manner that divests a secured mortgage lien from the sold property, the mortgagee is entitled to a share of the sale proceeds, regardless of whether the mortgage debt was due at the time of the sale. *In re Jones' Estate,* 275 Pa. 143, 145, 118 A. 647, 647 (1922). "The fact that a mortgage lien will be discharged by a sale, necessarily implies the right to include the debt secured thereby as one for the payment of which the sale is ordered." *Id.* at 648. A judicial sale discharges the liens from the sale property, but the sale proceeds come to represent the mortgaged real property; and the liens then attach to the proceeds. *Id.*

 Pennsylvania law entitles holders of secured liens recorded before a decedent's death to first payment from the proceeds of a judicial sale of the decedent's real property that is subject to the recorded lien. 20 Pa.C.S.A. §§ 3381, 3392; *In re Morrison's Estate,* 343 Pa. 157, 159–60, 22 A.2d 729, 731 (1941) (discussing prior enactment of 20 Pa.C.S.A. § 3392 and holding recorded judgment lien against decedent's real property maintained first priority over unsecured claims against estate). Section 3392 of the PEF Code determines only the relative rights of unsecured creditors. *Id.* Section 3392 does not affect the ultimate priority of secured claims, such as mortgage liens and judgment liens properly recorded before the decedent's death, which have first priority in an estate's distribution. *Id.* "The preferences created by our intestate laws in favor of funeral expenses, *etc.,* have never been permitted to postpone record

liens, even though personalty may have been lacking for the payment of such preferences." *Id.* at 159, 22 A.2d at 731.

Instantly, Decedent granted a mortgage on his real property in March 2004 to Mortgage Investors Corporation in exchange for a loan of $138,450.00. When Decedent died, the 2004 mortgage was the first and only lien on Decedent's real property. PNC obtained the 2004 mortgage by virtue of assignment. Decedent died testate in May 2011. Executrix admitted Decedent's will to probate, and the Montgomery County Register of Wills granted Executrix Letters Testamentary in August, 2011.

Executrix filed a petition on December 21, 2011, for leave to sell the mortgaged property pursuant to 20 Pa.C.S.A. § 3353, demonstrating the Estate was insolvent. PNC filed no response to Executrix's petition or objections to the sale. On February 2, 2012, the court authorized Executrix's proposed judicial sale under 20 Pa. C.S.A. § 3353 and discharged all the liens on the mortgaged property, so the property could be transferred with a clear title to the purchaser. The sale of the property closed on March 6, 2012.

On November 15, 2012, Executrix filed an account of the Estate with a proposed distribution, in which the Estate would pay, first and in full, the unsecured claims for the Estate's administration, Executrix's commission, attorneys' and accountant's fees, and funeral and medical expenses. The proposed schedule established the Estate would satisfy these accounts first and listed PNC as an unsecured "Class 6 creditor" under 20 Pa. C.S.A. § 3392. On December 17, 2012, PNC filed a petition for distribution of the judicial sale proceeds, in which PNC argued it was entitled to the entire net proceeds of the judicial sale, as the first and only secured lienholder of the proper-

ty sold. On December 24, 2012, PNC filed objections to Executrix's account. The court later dismissed PNC's December 17th petition in light of PNC's December 24th objections.

Executrix filed a petition on January 7, 2013, for adjudication, in which Executrix included a proposed schedule of distribution that again listed PNC as an unsecured "Class 6 creditor" under 20 Pa.C.S.A. § 3392. The proposed schedule allocated to PNC 99.6% of the Estate's remaining principal, after other distributions were made to satisfy first and in full the various unsecured claims against the Estate.

By order entered March 12, 2013, the court confirmed Executrix's account and ordered the Estate distributed according to Executrix's proposed schedule. In its order, the court confirmed the Estate's distribution to PNC as an unsecured Class 6 creditor, because the court determined the judicial sale of Decedent's mortgaged property had extinguished PNC's lien **and** its right of first priority to the sale proceeds.

▪ Initially, we observe PNC did not consent in writing to allow the judicial sale to divest the Decedent's property of PNC's lien. *See* 20 Pa.C.S.A. § 3357. PNC, however, also did not object to the judicial sale. Instead, PNC voiced its objections to Executrix's proposed distribution of the Estate, arguing its mortgage lien on the sale property entitled PNC to receive the entire proceeds from the sale of the property. Under 20 Pa.C.S.A. § 3357, the judicial sale divested all liens upon Decedent's real property so that the Estate could transfer the property with clear title to the purchaser. After the judicial sale, PNC's secured lien on the sale property did not cease to exist as a secured claim. Rather, following the judicial sale, the lien attached to the sale proceeds, which took the place of the real property. *See In re Jones'*

*Estate, supra.* By its nature, the judicial sale occurred so that the Estate could use the sale proceeds to satisfy secured liens upon the sold property. *See id.* Therefore, the trial court erred in determining the judicial sale extinguished PNC's right to the proceeds from the sale of the property. Here, Executrix's account of the Estate and the petition for sale of Decedent's mortgaged property asserted the Estate was insolvent and sought a judicial sale to satisfy claims against the Estate, including PNC's mortgage. The judicial sale removed PNC's lien from the real property but, by virtue of the sale, and absent any written consent from PNC, *see* 20 Pa.C.S.A. § 3357, the secured lien transferred to the sale proceeds. In essence, PNC effectively consented to the judicial sale but not to extinction of its lien to the proceeds of the sale. *See In re Jones Estate, supra.*

▪ Regarding the priority of distribution of claims against the Estate, PNC's secured claim, which had already been recorded at the time of Decedent's death, maintained its priority over all unsecured claims. The provisions of the PEF Code pertaining to unsecured claims upon an estate had no effect on the priority of PNC's secured claim. *See* 20 Pa.C.S.A. § 3381; *In re Morrison's Estate, supra.* Instead, PNC's secured claim entitled PNC to first distribution from the Estate. *See id.* Therefore, the court erred when it approved Executrix's proposed distribution, which relegated PNC's lien to a Class 6 unsecured claim per Section 3392. Here, PNC's lien upon Decedent's real property was recorded before Decedent's death. PNC's lien remained a secured claim against the Estate, after the judicial sale, and unaltered Section 3392 of the PEF Code. *Id.* Thus, PNC's lien retained its

priority over all unsecured claims against the Estate.

Based on the foregoing, we hold the trial court erred when it deemed PNC's lien completely extinguished by the judicial sale, and in approving Executrix's proposed distribution schedule that classified PNC as an unsecured Class 6 creditor. Following the judicial sale of Decedent's mortgaged property, PNC's lien on that property remained a secured claim against the Estate. The judicial sale divested the lien on the sale property but the lien attached to the sale proceeds, which took the place of the real property. Therefore, PNC's lien is superior to any unsecured claims against the Estate following the judicial sale and remains unaffected by Section 3392 of the PEF Code. As a secured claim, PNC's claim has first priority to distribution of the proceeds of the judicial sale. Accordingly, we vacate the order approving and dispersing the assets of the Estate according to Executrix's proposed schedule and remand for further proceedings to decide redistribution of the Estate assets.[1]

Order vacated; case remanded with instructions. Jurisdiction is relinquished.

1. At the proceedings, the competing parties might come to some compromise, in recognition of the efforts of the Executrix and the Estate's attorney to maximize the value of the Estate.