## De Peio Estate

758

*A. A. Guarino*, for accountant.

*William Slom*, for Commonwealth.

Klein, P. J., December 17, 1962.—Frank De Peio died on February 17, 1962, intestate, unmarried, and without issue leaving to survive him, as his sole heir-at-law and next of kin, his sister, Irene Pitis. Letters of administration were granted on April 4, 1962, and proof of advertisement of notice thereof was produced to the auditing judge.

All parties in interest are stated to have received notice of this audit.

Inheritance tax has not been paid, and none was claimed by the Commonwealth of Pennsylvania, as the estate is insolvent.

According to the inventory filed by the administratrix, the only asset of decedent's estate was his one-half interest in premises 2127 S. Opal Street, Philadelphia. Pursuant to petition filed under the provisions of section 543 of the Fiduciaries Act, the administratrix was authorized, by decree of this court dated June 4, 1962, to sell the said real estate at private sale for the sum of $4,350. Decedent's one-half interest in the proceeds of sale, or $2,175, is accounted for by the administratrix in her account.

The statement of proposed distribution lists as admitted the following claims:

| | |
|---|---:|
| A. A. Guarino, Esq., counsel fee | $200.00 |
| Irene Pitis, administratrix commission | 108.75 |
| Irene Pitis, "reimbursement funeral" | 617.00 |
| St. Agnes Hospital | 1,003.45 |
| Department of Public Welfare | 3,576.84 |

Mr. Slom, representing the Commonwealth of Pennsylvania, Department of Public Welfare, stated that the claim of the Commonwealth had been reduced to judgment on October 21, 1959, in the Municipal Court of Philadelphia, no. 2245. He stated that he had no objection to the allowance of counsel fee in the sum of $200 or to the administratrix' commission in the sum of $108.75, but that he did object to an allowance in any amount for decedent's funeral bill or his hospital bill. He contended that since the Commonwealth's claim had been reduced to judgment in the lifetime of decedent and was a lien against his real estate, it had priority in the distribution of the proceeds of sale of the real estate. There can be no doubt that Mr. Slom's position is correct. Section 611 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.611, reenacted the existing law and provided that liens or charges on real or personal estate of decedents which existed at death should not be impaired. This was done to avoid any possible indication that the rights of lien creditors would be impaired by death. Section 612 of the act provides as follows:

"Any judgment which at the decedent's death was a lien on real estate then owned by him or on real estate which he had conveyed by deed not recorded during his life shall continue to bind the real estate for five years from the inception or last revival of the lien or for one year from the decedent's death, whichever shall be longer, although the judgment be not revived after his death. During this period, the judgment shall rank according to its priority at the time of death, and after this period, it shall not continue to be a lien on the real estate, unless revived . . ."

This section is a substantial reenactment of section 15(g) of the Fiduciaries Act of June 7, 1917, P. L. 447. The only change, other than changes of style, is that the period of the automatic extension of the lien

of judgment is reduced from five years to one year, the draftsmen of the act being of the opinion that one year would give the creditor sufficient time to protect his interest.

Counsel for the accountant contended that distribution of the estate should be in accordance with the provisions of section 622 of the Fiduciaries Act of 1949, which lists the order of payment of claims against a decedent's estate. The precise question raised by him was decided by the Supreme Court in Morrison's Estate, 343 Pa. 157 (1941), in which the court decided that the section of the Fiduciaries Act which establishes the order of priorities in payment of debts of a decedent does not affect liens against real estate entered of record prior to decedent's death, including liens of the Commonwealth. The court stated at page 159:

". . . Section 13[a] was not intended to disturb liens against real estate entered of record prior to the decedent's death. This represents the settled policy of our decisions covering many years. That section is but a reenactment of section 21 of the Act of February 24, 1834 (1 Purdon, p. 1103), which was founded on section 14 of the Act of April 19, 1794, 3 Sm. L. 143. In Ramsey's Appeal, 4 Watts 71, 74, we said: 'The fund which arises from the sale of the real estate must be paid to the judgment-creditors, according to their respective priorities in point of time.' To the same effect is Boud's Appeal, 2 Pennypacker 241. Also, see Hocker's Estate, 14 Phila. 659, and Wade's Appeal, 29 Pa. 328. The preferences created by our intestate laws in favor of funeral expenses, etc., have never been permitted to postpone record liens, even though personalty may have been lacking for the payment of such preferences. Just so, the order of priorities fixing payments to the Commonwealth last in order cannot be construed as taking from the owner of record liens priorities

existing at the date of death. The claim of the Commonwealth is not a simple debt, but a judgment of record acquired before the decedent's death, and by reason of its prior entry it is entitled to the fund."

To the same effect, see Engle's Estate, 344 Pa. 535 (1942) ; Dry's Estate, 61 D. & C. 504 (1947). See also Miller Estate, 27 D. & C. 2d 460 (1962), in which our colleague, Judge Shoyer, reviewed this subject at considerable length.

The auditing judge therefore rules that the claim of the Commonwealth, which had been duly reduced to judgment in the lifetime of decedent, has priority over a claim for decedent's funeral expenses, hospital bills, and claims of general creditors in the distribution of the proceeds of sale of decedent's real estate. However, at the audit Mr. Slom agreed to the payment of $100 to St. Agnes Hospital on account of its claim referred to above.

And now, December 17, 1962, the account is confirmed nisi.