Lovering *v.* Erie Indemnity Company,
Appellant.

Argued September 30, 1963. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused December 12, 1963.

*Daniel J. Snyder,* with him *Avra N. Pershing, Jr.,* and *Pershing, Snyder and Ciarimboli,* for appellant.

*Ned J. Nakles,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 12, 1963:

The plaintiffs in this case, George Lovering and Ethel Lovering, his wife, carried an insurance policy which provided that in the event the insured were injured in an automobile accident, the insurance company (Erie Indemnity) would pay them "any uncollectible valid legal claim" (up to $20,000) as the result of damages suffered at the hands of a "financially irresponsible uninsured" motorist.

On December 9, 1960, the Loverings, while in their automobile, were injured through the alleged negligence of another motorist, Theodore Burns. They brought a trespass action in the Court of Common Pleas of Westmoreland County against Burns who failed to appear at the ensuing trial. The Trial Court,

sitting non-jury, entered verdicts in the sums of $24,-500 in favor of George Lovering and $18,000 in the name of Ethel Lovering. A writ of execution issued against Burns and, after service by the sheriff, a return was made of "No Goods." By discovery proceedings it was ascertained that Burns was uninsured, financially irresponsible and judgment proof.

The Loverings asked for indemnity under the "Innocent Victim" clause of their policy but the insurance company refused payment. They accordingly filed an assumpsit action against Erie Indemnity for $20,000. The insurance company filed an answer containing new matter in which it averred that the conditions of the policy had not been met by the plaintiffs.

It was stipulated in the policy, as conditions precedent to recovery, that the insured had to "prosecute his claim to a final contested judgment in a Court of Record against all known persons who might reasonably be considered to be responsible for his damages and have execution on the same rendered unsatisfied . . ."

Both parties, the plaintiffs and the insurance company, respectively, moved for judgment on the pleadings. The court entered judgment in the amount of $20,000 for the plaintiffs, and the company has appealed. It contends, inter alia, that the Loverings did not win a "final contested judgment" in their lawsuit against Burns, in the meaning of the policy, since Burns did not appear in court to defend himself. It must be stated at the outset in this connection that the Loverings did not obtain their verdict against Burns because of the latter's absence from court; they acquired it because they produced evidence which showed Burns to have been negligent and they showed further the extent of their injuries.

The appellant seems to be of the impression that a lawsuit is not "contested" unless there is a clashing of

forensic swords or some kind of a legalistic pugilistic combat. The fact of the matter is that, once a complaint is served on an individual in an adversary proceeding and the court obtains jurisdiction over him; *that* individual becomes a defendant and thus the opposing half of a contest. The defendant's absence from court produces no situation different from that one where he makes his appearance but introduces no evidence because he has none. In such a case the insurance company could not argue that the lack of defense evidence makes the lawsuit an uncontested action under the terms of the policy.

An insurance policy must be interpreted in the light of its intention. The intention of the policy in issue here is to indemnify the insured in the event he has the misfortune to be injured by an impecunious derelict, someone who is mere flotsam and jetsam floating on the sea of economic irresponsibility.

Since the insurance company thus envisages, as the judgment debtor in the negligence case, someone who is practically a pauper, before liability attaches against the insurer, is it too much to assume that anyone so impoverished would have no reason to hire a lawyer to fight to retain money or property he does not possess?

The interpretation contended for by the defendant company, if accepted, would render the coverage contracted for wholly pointless. It would mean that the policyholders would be covered if the allegedly negligent party comes into court declaring he is *not* negligent, but they would not be covered if the alleged negligent party acknowledges his negligence to the ultimate extent by declining even to present himself before the bar of the court to assert non-negligence.

The Loverings did everything possible to make Burns pay for the damages they sustained and it was not their fault that he gave the courthouse a wide

berth. The appellant labors under the misconception that there was an obligation on the part of the plaintiffs to, in some way or other (assuredly not specified by the insurance company), drag Burns before the tribunal of civil justice. How? It cannot be suggested that the plaintiffs could have had Burns arrested in a civil action, nor that they could have had him adjudicated in contempt of court, and thus be brought in under process. What control, then, did the plaintiffs have over the defendant? The answer, of course, is none.

The defendant company argues that the voluntary non-appearance of a defendant in a lawsuit could be the result of a collusive agreement between the parties. But a defendant could well stay away from a court, in a civil action, for many reasons which, in no way, lend themselves open to an interpretation of devious intention. It is conceivable that the defendant, while indigent, has a job which at least assures him of bread and lodging, but that he could not remain away from that job without the danger of being dismissed or losing wages which he desperately needs. The defendant, in those circumstances, could only go into court at the peril of losing the bare essentials of a livelihood. In a word, the absence of the defendant in a personal injury trespass case cannot be interpreted as even remotely hinting at collusion nor can the adversary nature of the proceedings be negatived by that absence.

If the insurance company intended to exclude indemnity where the negligent defendant keeps his distance from court, that exclusion should have been incorporated in the policy. The drafters of insurance policies, while undoubtedly intending to be fair with their policyholders (who, after all, are their customers), have a reason, nevertheless, to see to it that every possible avenue of escape, from what they regard to

be unjust payment, is paved with language over which there can be no stumbling as to the conditions of non-liability. The most meticulous study of the policy here in controversy fails to reveal *that* clear thoroughfare of immunity which the insurance company speaks of, but cannot point to. Since it is hornbook law that insurance policies are to be construed most strictly against those who write the policy, we cannot possibly read into the policy here involved what is simply not there.*

The appellant, arguing that there was no contest in the Lovering-Burns litigation, cites *Pratt v. Breckinridge,* 112 Ky. 1, where the Court said: "The word 'contest', in constitutions and statutes, is a word of art. It has a distinct, defined meaning. It is a litigation. It implies a plaintiff and a defendant, and a thing in controversy. When it is decided, it is, or should be, decided upon evidence, and the decision is a judgment."

But that is exactly what there was in the Lovering-Burns lawsuit, namely, a litigation, a plaintiff and a defendant, a thing in controversy, evidence, a decision and judgment. With all these criteria having been met, it is idle to say, as the appellant says in its brief, that the Lovering-Burns litigation was "mere shadow-boxing." A defendant in a lawsuit who has been hit with a $42,500 judgment can scarcely be heard to say that he was struck by a shadow.

Part V, (c) of the policy provides that the insured must "prosecute his claim to a final contested judgment in a Court of Record against all known persons who might reasonably be considered to be responsible for his damages."

From this provision the appellant maintains that the plaintiffs may not recover since the husband-plaintiff, who was driving his car when the accident oc-

---

* *Blue Anchor v. Pennsylvania Mutual Insurance,* 385 Pa. 394.

curred, was not brought into the case as an additional defendant. This is indeed shadow-boxing. No one charged George Lovering with being responsible for the accident, no one stated that he should be named a defendant, no one asked that he be made an additional defendant.

The insurance company asks for what under the circumstances was impossible. Certainly George Lovering could not enter a suit against himself. Mrs. Lovering could not sue her husband. Neither of them could have brought George Lovering on the record as an additional defendant. The contention of the insurance company in this respect is additionally untenable because the question as to whether George Lovering was negligent or not was adjudicated by the Court in the Lovering-Burns trial. When the Court entered a verdict in favor of George Lovering, it necessarily determined that he was free of contributory negligence and, having been free of contributory negligence, he could not have been guilty of negligence as a defendant or original defendant.

Finally, the insurance company urges that the non-jury nature of the trial was violative of Burns' constitutional right to a jury trial and that, therefore, the judgment entered in that trial cannot be the basis of a "final contested judgment." If a defendant fails to respond to the notice of a trial he forecloses himself from complaining later that he did not have a jury trial. His failure to appear must be deemed a waiver of his right to demand a jury trial. In *Ondick v. Ondick*, 399 Pa. 432, 435, this Court said: "One of the arguments advanced by Attorney No. 5 is that the court of common pleas was without authority to hear the case non-jury because, under Rule No. 54 of the Court of Common Pleas of Allegheny County, both parties are required to agree to a non-jury trial. But neither Rule No. 54 nor any other rule of court can be

used to support the complaint of a party who deliberately stays away from court after having been duly notified to be present. If this argument of the defendants were to be sustained, it would mean that a party litigant could monkey-wrench the machinery of justice through the simple expedient of ignoring all processes issuing under the direction and authority of the Courts."

Judgment affirmed.

Mr. Justice COHEN concurs in the result.