## Murray *v.* Corrigan, Appellant.

*C. William Berger,* with him *Morris M. Berger,* and *Berger & Kapetan,* for appellant.

*Samuel Avins,* for appellee.

OPINION BY CERCONE, J., June 14, 1973:

This is an appeal by defendant from the lower court's refusal of her exceptions to the finding of the trial court which held her liable to plaintiff for damages in the amount of $20,000 in a criminal conversation trespass case.

We cannot agree with defendant's contention that the plaintiff's proceeding ex parte in a nonjury trial was violative of her constitutional rights. Under the circumstances of this case defendant did have notice of the trial date and if she did not have such notice, it was the result of her wilfully ignoring her counsel's attempts at communication with her. Therefore, she cannot in good faith contend her rights were violated by the court's allowing plaintiff to proceed ex parte in a nonjury trial. We believe the holdings of the Supreme Court in *Ondick v. Ondick,* 399 Pa. 432 (1960), and *Lovering v. Erie Indemnity Company,* 412 Pa. 551 (1963) to be appropriate to the facts of this case.

However, though the trial did properly proceed nonjury, we must agree with defendant's contention that the trial judge's finding defendant guilty of criminal conversation is not supported by the evidence. The trial judge in his opinion states: ". . . the plaintiff has introduced sufficient evidence of circumstances from which illicit intercourse may be inferred. The circumstances from which this court based the inference of illicit intercourse are the plaintiff's husband and the defendant sleeping in the basement of the cafe and the husband visiting and remaining in the defendant's home from about 10:00 o'clock A.M. to about 6:00 P.M. on various occasions and their trips together to the cabin owned by plaintiff and plaintiff's husband."

However, the trial judge's inferences are not supported by the record because there is not one iota of proof of these circumstances upon which the trial judge predicated his inference of defendant's misconduct. The only testimony offered was that of the plaintiff, and she did not testify that these circumstances had been witnessed by her. Not only does her testimony fail to indicate her personal knowledge of the circumstances she was testifying to, but in fact, lack of personal knowl-

348

edge is indicated. Her scant testimony on the subject
was as follows: "A. Well, she—We have a cafe that we
own together, and she would go into the cafe, and my
husband would work until 10:00 o'clock, and she would
be on the other side of the bar unless he was finished.
This is 10:00 o'clock in the morning. Then she—He
would come from around the bar, and he would sit there
with her, and then have some drinks, and they'd take
off and go to her house in Greentree. Q. How long
would they stay at her house? A. Well, he would be
home when I got home from work at 6:00 o'clock. Q.
For how long a period of time did this continue when
he would go out to her house everyday with her and
spend this time with her? A. Well, you mean how long
had this been going on? Q. Yes. How long did it go
on for? A. Well, I only found out really about it in
May of '67 when I quit work, but I know that this had
been going on. I could tell by his actions that some-
thing was wrong with our relationship. Q. All right.
Did you and Mr. Murray have a cabin in the country?
A. Yes, we did. Q. Did he ever take Lucy Corrigan up
to this cabin? A. Yes. She went up there after we
had separated. Q. Prior to the time you separated, he
would go to the home of her's. Is that correct? A. Over
to her home. They'd either stay over at her place, or
they sleep in the basement of the cafe, which is not a
bedroom. Q. But, is there a bed or other facility down
there? A. They have put something down in there. I
don't go down there. I don't dare go over there at the
cafe because she's taken my place. Q. This went on or
you found out about it by telephone calls to the cafe,
and you found out that he was not coming home like
he normally did. Is that correct? A. When I quit
work, I had more time to observe what was going on.
When I'd call down there in the morning, and they'd
say that he's gone; and I'd say, 'Well, did he say where

he was going'; and they'd say, 'No.' Formerly he had always come home because when he was through work, he'd come home. Maybe he'd go golfing once in a while in the afternoon." It can be seen from the above that the wife-plaintiff did not support her accusations of defendant's misconduct with her husband by evidence of facts or circumstances actually witnessed by her or others. There was, therefore, no testimony by plaintiff, or by any other witness, which provided *evidence* of the existence of the circumstances relied upon by the trial judge that defendant slept in the basement of the cafe with the plaintiff's husband or that she had stayed in the cabin with plaintiff's husband or that plaintiff's husband spent time at defendant's home. The fact that plaintiff's marriage was deteriorating, that her husband did not spend his time with her as he did in the past, and that he was not at the cafe when she called can give no reasonable or legal support for a finding that he was therefore necessarily with the defendant either at her home, in the cafe basement, or in the cabin. In adopting plaintiff's testimony, which was thus wholly lacking in probative value, as support for his finding against defendant, the trial judge was drawing inference from inference and not drawing inference from fact. This court is therefore free to disregard such inference: *Kalyvas v. Kalyvas,* 371 Pa. 371, 375-376 (1952); *Obici Estate,* 373 Pa. 567, 576 (1953); *Hindman's App.,* 85 Pa. 466, 470.

The judgment entered against defendant is therefore reversed, and judgment is hereby ordered to be entered in her favor.