**NATIONWIDE MUTUAL INSURANCE COMPANY**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY.**

Civ. A. No. 77–3237.

United States District Court,
E. D. Pennsylvania.

Dec. 8, 1981.

Curtis P. Cheyney, III, Swartz, Campbell & Detweiler, Philadelphia, Pa., for plaintiff.

Albert J. Schell, Jr., Philadelphia, Pa., for defendant.

### MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This action was originally a declaratory judgment action which came before the Court on the parties' cross-motions for summary judgment. The parties now agree that in the event that the plaintiff, Nationwide Mutual Insurance Company (Nationwide), is entitled to summary judgment, that judgment may be entered in the amount of $175,531.66, the amount of benefits paid by Nationwide as a result of an

accident involving a minor, Robert Treegoob, now deceased, which occurred on May 21, 1976. Nationwide asks this Court to determine that the defendant, United States Fidelity and Guaranty Company (USF&G), must reimburse it for these loss benefits on the ground that USF&G was responsible for the payment of these benefits under § 204(a) of the Pennsylvania No-Fault Motor Vehicle Insurance Act (No-Fault Act), 40 P.S. § 1009.101 *et seq.* The facts material to a resolution of the issue before the Court are undisputed and for the reasons set forth below the Court has determined that summary judgment must be granted in favor of Nationwide in the amount of $175,531.66.

There is no dispute as to the facts precipitating this litigation. Robert S. Treegoob was struck and severely injured by an automobile while crossing Stoneridge Road in Villanova, Pennsylvania on May 21, 1976. Robert was the minor son of Warren Treegoob and resided with him. At the time of the accident Nationwide had issued and in full force and effect an automobile liability policy covering the automobile which struck Robert Treegoob, which policy provided no-fault insurance coverage under the provisions of the No-Fault Act. USF&G had issued and in full force and effect at the time of the accident, a comprehensive general-automobile liability insurance policy covering two automobiles owned or leased by Valient Finance Company and/or Treegoob Appliances, Inc., which were available to Warren Treegoob for pleasure and business purposes.

Endorsement # 4 of the USF&G policy identifies the "named insured" of that policy as follows:

It is hereby agreed and understood that the Named Insured is:

Harold and Warren Treegoob T/A Treegoob's;

Treegoob's Appliances, Inc.;

Warren Mark Corporation;

Valient Finance Company, Inc.; and

Valient Consumer Discount Company, A.T.I.M.A.

[as their interests may appear]

Beneath the designation of the named insured appears the following addendum:

It is also agreed and understood that the five above mentioned entities are of common financial ownership and control.

The USF&G policy contains a number of endorsements defining the type and scope of coverage provided by the policy. Endorsement # 10, entitled Basic Personal Injury Protection Endorsement, which was "rolled on" to the pre-existing policy in 1975 pursuant to the No-Fault Act, provides, in part:

In accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act, the Company will pay any or all personal injury protection benefits for:

(a) medical expenses,       (d) funeral expenses and
(b) work loss,              (e) survivor's loss
(c) replacement services loss,

for bodily injury to an eligible person due to an accident resulting from the maintenance or use of a motor vehicle as a vehicle.

An "eligible person" is defined in Endorsement # 10 as:

(a) the *named insured* or any *relative* who sustains *injury* while *occupying* or as a pedestrian struck by, any *motor vehicle,*

(b) any other person who sustained *injury*

(1) while *occupying,* or as a pedestrian struck by, the *insured motor vehicle* ; or

(2) while *occupying* a *motor vehicle* not owned by, but operated by the *named insured* or *relative,* other than a public livery or conveyance, if *bodily injury* results from the operation of the *motor vehicle* by the *named insured* or ·*relative.* (emphasis in the original).

The Warren Treegoob family, at the time of the accident, did not own or have available for their use any automobiles other than those covered by the USF&G policy, nor did they maintain any automobile liability or no-fault insurance coverage other than that provided by the USF&G policy.

■ The question now before the Court is whether under the policy issued by USF&G, USF&G is responsible for the payment of basic loss benefits to the family of Robert Treegoob. Both parties agree that this question must be decided in accordance with Pennsylvania law and that the applicable statutory provision is § 204(a) of the Act, 40 P.S. § 1009.204(a), which establishes categories and priorities as between insurers responsible for the payment of loss benefits, provides

§ 1009.204    Source of basic restoration benefits

(a) Applicable security.—The security for the payment of basic loss benefits applicable to an injury to:

(1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim;

(2) an insured is the security under which the victim or deceased victim is insured;

(3) The driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;

(4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause unreasonable risk of injury; and

(5) any other individual is the applicable assigned claims plan.

Under the system of priorities established by § 204(a), each subparagraph only becomes applicable after it has been determined that the prior subparagraph is inapplicable. *See Gradler v. Prudential Property & Casualty Insurance Company*, 464 F.Supp. 575, 577–78 (W.D.Pa.1979); *Schimmelbusch v. Royal-Globe Insurance Co.*, 247 Pa.Super. 28, 371 A.2d 1021, 1023 (1977).

Nationwide contends that the USF&G policy is the applicable security under § 204(a)(2) for the payment of basic loss benefits to Robert Treegoob. USF&G, on the other hand, asserts that the Nationwide policy is the applicable security under § 204(a)(4). These contrary positions result from the parties' differing interpretations of the named insured endorsement appearing in the USF&G policy.

Nationwide asserts that Warren Treegoob is a named insured under the USF&G policy by virtue of the designation "Harold and Warren Treegoob T/A Treegoobs" appearing in Endorsement # 4 of the USF&G policy. Both parties agree that if Warren Treegoob is in fact a named insured under the policy, his son, Robert Treegoob, is eligible for personal injury protection under Endorsement # 10 of the USF&G policy and that the USF&G policy is the applicable security under § 204(a)(2) as "the security under which the victim is insured".[1]

USF&G, however, denies that Warren Treegoob is a named insured under Endorsement # 4 and asserts that the phrase "Harold and Warren Treegoob T/A Treegoobs" designates only the partnership "Treegoobs" as a named insured and since a partnership does not have relatives, Robert Treegoob, under the given facts, is not eligible for personal injury protection under Endorsement # 10 of the USF&G policy and

---

1. Section 103 of the No-Fault Act, in pertinent part, defines an insured as
(b) a spouse or other relative of a named insured, a minor in the custody of a named insured, and a minor in the custody of a relative of a named insured if,
(i) not identified by name as an insured in any other contract of basic restoration insurance complying with this act; and
(ii) in residence in the same household with a named insured.

is not an "insured" under § 204(a)(2) of the No-Fault Act.

Nationwide offers three principal arguments in support of its interpretation of the policy. First, Nationwide argues that Endorsement # 4 read as a whole clearly designated Warren Treegoob as a named insured or, at the very least, is ambiguous and must be construed against the insurer USF&G, the company which drafted the policy. Second, Nationwide argues that under Pennsylvania law the designation of a partnership as the named insured operates to insure the partners as individuals. Lastly, Nationwide argues that Robert Treegoob is entitled to personal injury protection benefits under the so-called "reasonable expectations rule" because "insurance contracts should provide that coverage one would reasonably expect upon a reading of the policy."

In support of its motion and in response to Nationwide's arguments, USF&G asserts: that the policy, read as a whole, unambiguously designates the partnership entity as the named insured; that under Pennsylvania law a partnership is an insurable entity independent of the individual partners and; that the reasonable expectations rule is not applicable in this instance because coverage was not denied on the basis of an exclusionary provision.

■■■ Neither party has been able to provide the Court with a Pennsylvania decision addressing the question now before the Court. However, the rules relating to the construction of insurance policies in Pennsylvania are well established.

Since the policy is a contract, the court's duty is to ascertain the intent of the parties as manifested in the language of the agreement. *Mohn v. American Cas. Co. of Reading*, 458 Pa. 576, 326 A.2d 346 (1974); *Lovering v. Erie Indem. Co.*, 412 Pa. 551, 195 A.2d 365 (1963); *Treasure Craft Jewelers, Inc. v. Jefferson Ins. Co.*, 583 F.2d 650, 652 (3d Cir. 1978). The court should read policy provisions so as to avoid ambiguities, if the plain language of the contract permits. *Pennsylvania Manufacturers' Association Ins. Co.*

*v. Aetna Casualty & Sur. Ins. Co.*, 426 Pa. 453, 457, 233 A.2d 548, 551 (1967); *Kattelman v. National Union Fire Ins. Co.*, 415 Pa. 61, 64, 202 A.2d 66, 67 (1964). A court should not torture the language of the policy in order to create ambiguities. *Urian v. Scranton Life Ins. Co.*, 310 Pa. 144, 165 A. 21 (1933). If the language is unambiguous, interpretation of the contract is a matter of law for the court. *Adelman v. State Farm Mut. Auto. Ins. Co.*, 255 Pa.Super. 116, 123, 386 A.2d 535, 538 (1978); *Blocker v. Aetna Cas. & Sur. Co.*, 232 Pa.Super. 111, 114, 332 A.2d 476, 477–78 (1975). If an ambiguity does exist and if the insurer wrote the policy or is in a stronger bargaining position than the insured, the ambiguity is generally resolved in favor of the insured and against the insurer. *Mohn v. American Cas. Co. of Reading, supra; Lovering v. Erie Indem. Co., supra* at 556, 195 A.2d at 368; *Hionis v. Northern Mut. Insurance Co.*, 230 Pa.Super. 511, 516, 327 A.2d 363, 365 (1974). However, the principle that ambiguities in policies should be strictly construed against the insurer does not control the situation where large corporations, advised by counsel and having equal bargaining power, are the parties to a negotiated policy. *Eastcoast Equipment Co. v. Maryland Cas. Co.*, 38 Pa.D. &C.2d 499, 511–12 [207 Pa.Super. 383], 218 A.2d 91, 98 (Pa.C.P.1965), *aff'd per curiam on opinion below*, 207 Pa.Super. 383, 218 A.2d 91 (1966); 13 Appleman, Insurance Law and Practice § 7402, at 301 (1976).

*Eastern Associated Coal v. Aetna Casualty and Surety*, 632 F.2d 1068, 1075 (3d Cir. 1980). A provision of an insurance contract is ambiguous if reasonably intelligent individuals on considering it in the context of the entire policy would honestly differ as to its meaning and if alternative or more precise language, if used, would have put the meaning of the language beyond a reasonable question. *Disanto v. Enstrom Helicopter Corporation*, 489 F.Supp. 1352, 1359 (E.D.Pa.1980); *Celley v. Mutual Benefit Health and Accident Association*, 229 Pa. Super. 475, 324 A.2d 430 (1974).

■ Having reviewed Endorsement # 4 in the context of the entire policy the Court finds the meaning of the phrase "Harold and Warren Treegoob T/A Treegoobs" is ambiguous in that reasonable individuals could differ as to whether this provision designates the partnership, the individuals, or both as the named insured.

USF&G asserts that Endorsement # 4 is not ambiguous and that if Harold and Warren Treegoob were intended to be insured as individuals the addendum to Endorsement # 4 which states "It is also agreed and understood that the five above mentioned entities are of common financial ownership and control" would have read "the five above mentioned entities and individuals . . . ."

Although USF&G's interpretation of the addendum is consistent with its interpretation of the named insured being the partnership entity, the addendum, as written, does not preclude an interpretation of the named insured as including both the individual partners and the partnership. The addendum simply states that the five entities identified in the list of named insured is commonly owned and controlled. Since there cannot be common financial ownership and control of the individuals Harold and Warren Treegoob, there is no reason for their inclusion in the addendum.

Even if we were to accept USF&G's argument regarding the addendum to Endorsement # 4, the meaning of the phrase "Harold and Warren Treegoob T/A Treegoob's" remains ambiguous when read in conjunction with the definition of an "eligible person" contained in Endorsement # 10. Under this definition persons eligible for personal injury protection benefits include the named insured or "relatives" of the named insured. Thus, if we accept USF&G's interpretation of the named insured, we would have to read the definition of "eligible persons" contained in Endorsement # 10 as if the references to relatives were not there. However, under Pennsylvania law "the court's duty is to ascertain the intent of the parties as manifested in the language of the agreement. In dis-

charging its duty, the court should attempt to view the policy *in its entirety, and give effect, if possible, to all portions of the contract." Treasure Craft Jewelers v. Jefferson Insurance Co.*, 583 F.2d 650, 652 (3d Cir. 1978) [emphasis added].

Reading the policy as a whole and giving effect to the references to "relatives" of the named insured contained in Endorsement # 10 it appears that the phrase "Harold and Warren Treegoob T/A Treegoob's" was intended to designate both the individuals and the partnership as named insureds. However, granting USF&G the benefit of the doubt, the phrase is at best ambiguous and the ambiguity must be resolved in this case against USF&G, the party who wrote the policy. Therefore, the Court finds that the phrase "Harold and Warren Treegoob T/A Treegoob's" designates Warren Treegoob as a named insured under the USF&G policy and that Robert Treegoob, the minor son of the named insured, is entitled to personal injury protection benefits under Endorsement # 10, thereby making the USF&G policy the applicable security under § 204(a)(2) for the payment of basic loss benefits to Robert Treegoob.

The Court also notes that this interpretation of the policy carries out the intent of the parties as evidenced by the terms of the policy as a whole. Under the terms of the policy and the accompanying endorsements as they existed before the no-fault coverage provided by Endorsement # 10 was rolled on, Harold and Warren Treegoob and their wives appear to have had liability coverage in connection with the use of the partnership automobiles as well as other automobiles used but not owned by them, whether those automobiles were being used for the business of the partnership or the partner's personal or pleasure use. For instance, Endorsement # 7 specifically names "Harold Treegoob & Sylvia H/W, Warren Treegoob & Bonnie H/W, and Mark Treegoob" in the endorsement which extends the coverage of the basic policy to the Treegoobs as individuals while operating other non-owned automobiles and Endorsement # 9 makes it clear that the liability coverage is applicable

whether the automobiles of the partnership are being used for business, *personal* or pleasure activities by the named insured. It thus appears that Endorsement # 10, which was rolled onto the policy in 1975 in order to provide the personal injury protection required by the No-Fault Act, was intended to extend personal injury protection coverage to the same degree the policy provided liability coverage, namely, to the individual partners as well as the partnership.

Although there are no Pennsylvania decisions addressing the issue before this Court, plaintiff has referred the Court to a decision of the District Court of Appeal of Florida, *Ohio Casualty Insurance Company v. Fike*, Fla.App., 304 So.2d 136 (1975) which considered a similar situation. In *Fike*, the insurer had issued a policy which designated the named insured as "Russell C. Fike, Jr. and Robert D. Fike d/b/a Orange State Painting Company." The declaration page of the policy designated the insured as a partnership from among several different categories listed. The policy also contained a no-fault endorsement which provided personal injury protection benefits to any relative of the named insured injured in a motor vehicle or while a pedestrian. Based on these facts, the District Court of Appeal of Florida determined that Russel Fike was a named insured under the Florida no-fault policy and that his daughter, who had sustained injuries when she was struck by an automobile while a pedestrian, was entitled to personal injury protection benefits as a relative of the named insured. *Id.* at 137–38. The Florida Court noted in its opinion:

> The fact that the defendant insurer issued an amendatory endorsement to the policy in question which provided personal injury protection to "the named insured, *or any relative*" seems inapposite to the insured's [sic] position that the policy in question was intended to be limited to a "partnership"; if anything, the amendatory endorsement is reflective of an intention to insure the *individual* as well as the partnership. *Id.* at 137.

Although the Florida court reached its final determination on the basis of partnership theory (which we will discuss at a later point in this memorandum), the court noted that a similar determination could be made on the basis of ambiguity.

> The ambiguity exists with respect to whether the "named insured" is limited to the partnership entity or whether it also includes the individuals named therein, particularly where an amendatory endorsement is made without limitation. All ambiguities and uncertainties are resolved in favor of the insured and against the insurer. *Id.* at 137–38, n. 2.

As we heretofore determined, the rules of construction, as defined by the Pennsylvania courts, lead this Court to the same result in this case.

Turning now to Nationwide's second argument, the Court is persuaded that its determination is also supported by the concepts relating to the law of partnership in Pennsylvania. Pennsylvania has enacted the Uniform Partnership Act, 59 Pa.Con. Stat.Ann. § 301 *et seq.* and "whether a partnership is to be regarded as an entity under the Act will and should be governed by the particular question to be decided by the Appellate Court of the particular state jurisdiction or of a Federal court following state substantive law under *Erie R. R. v. Tompkins.*" Lewis, *Is A Partnership Under The Uniform Partnership Act An Aggregate Or An Entity?* 16 Vand.L.Rev. 377, 384 (1963).

The decisions of the Pennsylvania Supreme Court since the adoption of the Uniform Partnership Act indicate that Pennsylvania, while recognizing a partnership as an entity for some limited purposes, still adheres to the aggregate theory of partnership.

In *Morrison's Estate*, 343 Pa. 157, 22 A.2d 729 (1941), the Supreme Court of Pennsylvania set forth the basic law of the Commonwealth with respect to partnerships:

> We deem it to be the law in Pennsylvania and the approved opinion in most other jurisdictions that a partnership is not recognized as an entity like a corporation, that it is not a legal entity having as such

a domicile or residence separate and distinct from that of the individuals who compose it. It is rather a relation or status between two or more persons who unite their labor or property to carry on a business for profit. This is subject to an apparent exception, for while a partnership as such is not a person, it, as a matter of fact, is treated by a legal fiction as a quasi person or entity for such purposes as keeping of partnership accounts and marshalling assets.

*Id.* at 162, 22 A.2d at 732. Twenty years later in *Tax Review Board of Philadelphia v. D. H. Shapiro Co.*, 409 Pa. 253, 185 A.2d 529 (1962), the Supreme Court of Pennsylvania, after quoting its decision in *Morrison* at length, stated

We could multiply authorities, but we must hold that the weight of authority in this Commonwealth is to the effect that a partnership is treated as an aggregate of individuals and not as a separate entity.

*Id.* at 260, 185 A.2d at 533.

█ There is no indication in subsequent Pennsylvania case-law that the Pennsylvania Supreme Court would choose to abandon the position taken in *Morrison, supra,* and *Tax Review Board of Philadelphia, supra.* Therefore, in light of Pennsylvania's adherence to the aggregate theory of partnership, we predict that the Pennsylvania Supreme Court would hold that the designation of the named insured in this case as "Harold and Warren Treegoob T/A Treegoob's" insured Warren Treegoob in his individual capacity.

In similar situations the District Court of Appeal in Florida and the Supreme Court of Wisconsin reached the same result relying on the aggregate theory of partnership. In *Fike, supra,* the Florida District Court of Appeal held that

although in the commercial sense a partnership is looked upon as a "legal entity", Florida follows the common law view *"that a partnership is not a legal entity apart from the members composing it,"* [citation omitted]. Where a policy of insurance refers to the partnership entity as the "named insured" and then pro-

ceeds to list the names of the individual partners in describing the "named insured", the policy must be read to cover "the partners as *individuals* as well as partners as an entity" unless a contrary intention clearly appears. [citation omitted].

304 So.2d 136 at 137 [Court's emphasis].

Likewise in *McDonald v. Aetna Casualty & Surety Co.*, 47 Wis.2d 235, 177 N.W.2d 101 (1970), the Supreme Court of Wisconsin held that under a policy listing the named insured as

Frank Schubert Meat Market

(Willard Schubert and Frank W. Schubert d/b/a)

the individual partners, as well as the partnership, were named insureds. The Wisconsin court stated:

Under common-law doctrine, Wisconsin has held a partnership to be no more than an aggregate of individual partners. Under the Uniform Partnership Act as adopted in Wisconsin, the concepts of entity and aggregate are commingled. For some purposes, notably the conveyance of property and the holding of title to property, the partnership is considered to be a separate entity. In other situations, the aggregate concept of the partnership as " * * * an association of two or more persons to carry on as co-owners a business for profit," has been recognized by this court as continuing and controlling. While the entity aggregate concepts have and will continue to collide, here, particularly because the Aetna policy names the partnership as the insured and then goes on to list the names of the individual partners in describing the named insured, we hold that the policy must be read to cover the partners as individuals, as well as the partnership as an entity.

177 N.W.2d at 103. Thus, the Court's determination that under the facts of this case the designation of the named insured as "Harold and Warren Treegoob T/A Treegoob's" insured Warren Treegoob in his individual capacity is also supported by the aggregate concept of a partnership.

Even assuming that the named insured of the USF&G policy was limited to the partnership entity, the Court is persuaded that USF&G is likewise responsible for the payment of personal injury benefits in this case on the basis of the "reasonable expectations rule." The simplest statement of the rule is that "insurance contracts should provide that coverage which one would reasonably expect upon a reading of the policy." *Brokers Title Co. v. St. Paul Fire and Marine Insurance Company*, 466 F.Supp. 1174 (E.D.Pa.1979) *reversed*, 610 F.2d 1174 (3d Cir. 1979) (reversed on the ground that the insured was a sophisticated buyer).

To the extent this rule can be said to be applied by Pennsylvania courts it is applied in situations where an insurer denies coverage on the basis of an exception or an exclusion in a policy. *Brokers Title Co. v. St. Paul Fire and Marine Insurance Company*, 466 F.Supp. at 1179; *see Daburlos v. Commercial Insurance Co.*, 521 F.2d 18 (3d Cir. 1975); *Hionis v. Northern Mutual Insurance Company*, 230 Pa.Super. 511, 327 A.2d 363 (1974). In these situations, even where the terms of the exception or exclusion are unambiguous, Pennsylvania law places the burden on the insurer of showing that the exception or exclusion applies and that it was so explained to the insured. *Daburlos v. Commercial Insurance Co.*, 521 F.2d at 24; *Weissman v. Prashker*, 405 Pa. 226, 233, 175 A.2d 63 (1961); *Hionis v. Northern Mutual Insurance Company*, 230 Pa.Super. at 517, 327 A.2d at 365. The rule only applies where the insurer is in a superior bargaining position to the insured. *Brokers Title Co. v. St. Paul Fire & Marine Insurance Company*, 610 F.2d 1174, 1177–79 (3d Cir. 1979).

In *Hionis v. Northern Mutual Insurance Company, supra*, the Superior Court of Pennsylvania explained the policy considerations underlying the rule:

Insurance contracts have been viewed under the law as contracts of "adhesion", where the insurer prepares the policy for a purchaser having no bargaining power. Where a dispute arises, such contracts are construed strictly against the insurer. *East Coast Equipment v. Maryland Casualty Company*, 38 D. & C.2d 499, 207 Pa. Super. 383, 218 A.2d 91 (1966). In *East Coast*, we affirmed the decision of a court en banc on the basis of the lower court opinion which provided in part: "The policy behind this rule [construction against the insurer] is sound; the insurer wrote the policy and the individual purchaser is concerned primarily with monetary benefits. Concern with definitional clauses and exclusions is minimal; therefore, if they do become material, they should be strictly construed against the insurer." 38 D. & C.2d at 511, 218 A.2d at 98. When a defense is based on an exception or exclusion in a policy, our Supreme Court has held that such a defense is an affirmative one, and the burden is upon the defendant to establish it. *Weissman v. Prashker*, 405 Pa. 226, 233, 175 A.2d 63 (1961). Even where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him. *See e.g., Frisch v. State Farm Fire and Casualty Co.*, 218 Pa.Super. 211, 275 A.2d 849 (1971); *Purdy v. Commercial Union Insurance Co. of New York*, 50 D. & C.2d 230, 235 (1970).

230 Pa.Super. at 516–17, 327 A.2d at 365.

The Superior Court expressed these same considerations in *Klischer v. Nationwide Life Insurance*, 281 Pa.Super. 292, 422 A.2d 175, 178 (1980), where the court stated:

We adhere to our view expressed in *Hionis*. The major premise upon which *Hionis* rests is the vast inequality of bargaining power between the insurer and the typical purchaser of insurance. As a direct result of that disparity, the insurer may dictate the terms and conditions of the policy. Whether the policy is clear and precise or whether it is oblique and ambiguous, the disparity between the parties remains the same. Moreover, the insured's primary interest, which is obtaining the maximum coverage for his insurance dollar, is no less valid when the

policy is unambiguous than it is when the policy is obscure. The policies served by *Hionis* are particularly pertinent when, as here, the insured buys insurance expecting to be covered for certain risks.

Although we recognize that there may be some question as to whether this case technically involves a defense based on an exception or exclusion in the policy, the Court finds that the facts of this case together with the intent of the parties as expressed by the terms of the policy require the application of the above discussed rule in the instant case.

Prior to the passage of the Act, the policy issued by USF&G to "Harold and Warren Treegoob T/A Treegoob's" provided comprehensive general automobile liability insurance. Even assuming that the named insured of the policy was the partnership entity "Treegoob's", the actual coverage provided by the policy extended beyond the partnership entity by virtue of endorsements added to the policy.

Endorsement # 7 entitled "Use of Other Automobiles Coverage-Broad Form" extended the bodily injury and property damage coverage afforded by the policy with respect to the automobiles named in the policy to any other automobiles used or operated by the insured, subject to certain limitations. The endorsements specifically names as insureds for this coverage "Harold Treegoob & Sylvia H/W, Warren Treegoob & Bonnie H/W, Mark Treegoob."

Endorsement # 9 to the policy entitled "Application of Insurance to Owner of Hired Automobile" modified the Comprehensive Automobile Liability Insurance to cover

as an *Insured* the owner, any lessee (of whom the *Named Insured* is a sub-lessee) and any agent or employee of such owner or lessee, but only while such *automobile* is used in the business of the *Named Insured* as stated in the declarations, or by or on behalf of the *Named Insured* for personal or pleasure purposes. (emphasis in the original).

The apparent purpose, intent and effect of these endorsements in conjunction with the basic policy was to provide Harold Treegoob, Warren Treegoob and their families complete and comprehensive automobile liability coverage for their business, personal and pleasure activities. Having taken the steps necessary to procure comprehensive automobile liability coverage for himself and his family it was only reasonable for Warren Treegoob to assume that the scope of the personal injury protection coverage rolled onto the policy pursuant to the No-Fault Act would be commensurate with the scope of his pre-existing coverage and the coverage required under the No-Fault Act.

The policy considerations which underlie Pennsylvania's rule requiring an insurer who defends on the basis of an exception or exclusion in the policy to prove that the exception or exclusion was explained to the insured require application of the rule in this case. There is no question that there was a disparity in bargaining power between the parties to the USF&G policy. USF&G wrote the policy and rolled Endorsement # 10 onto the policy. USF&G now asserts that the no-fault coverage provided by Endorsement # 10 was limited to the partnership entity and that Warren Treegoob should have requested an additional endorsement if he wished to extend the no-fault coverage to himself and the individual members of his family as insureds. There is no reason provided by the uncontested facts to expect Warren Treegoob to be aware of the limited scope of the no-fault coverage being claimed by USF&G. As heretofore stated, the policy as it existed before Endorsement # 10 was rolled on evidenced an intent on the part of the parties to provide comprehensive automobile insurance coverage for Warren Treegoob and his family and created the reasonable expectation that the additional no-fault coverage rolled onto the policy would be commensurate with the pre-existing coverage to the extent that the members of the family would be covered.

In light of these considerations, we find that USF&G has the burden of showing that the limited nature of the no-fault protection coverage and the necessity of add-

ing another endorsement to the policy in order to expand that coverage to coincide with the scope of the pre-existing coverages was explained to the Treegoobs.

Nationwide has submitted with its motion the affidavit of Warren Treegoob which states that USF&G never explained the limited scope of the personal injury protection which it rolled onto the policy to Warren Treegoob. Since USF&G has not filed a responsive affidavit, the Court accepts the facts set forth in Warren Treegoob's affidavit as true and finds that the limited scope of Endorsement # 10 and the necessity of an additional endorsement were never explained to Warren Treegoob. We shall therefore construe the policy in accordance with the reasonable expectations and intent of the parties as expressed in the policy and conclude that the no-fault coverage provided by Endorsement # 10 extended to the members of the Warren Treegoob family.

In conclusion, the Court predicts that the Supreme Court of Pennsylvania, if presented with the issue now before the Court, would, on the basis of one or more of the reasons set forth above, hold that the USF&G policy provided no-fault benefits to Robert Treegoob and that the USF&G policy is the applicable security for the payment of basic loss benefits to Robert Treegoob under § 204(a) of the No Fault Act and that Nationwide is entitled to recover from USF&G those benefits which Nationwide paid to Robert Treegoob which benefits should have been paid by USF&G, pursuant to § 204(a). Accordingly, this Court will enter summary judgment in the amount of $175,531.66 in favor of Nationwide Mutual Insurance Company and against United States Fidelity and Guaranty Company.